BOROUGH OF EDGEWATER, PETITIONER-APPELLANT, v. CORN PRODUCTS REFINING COMPANY, DEFENDANT-RESPONDENT.

Argued October 24, 1947—Decided January 29, 1948.

For the appellant, *Milton T. Lasher*.

For the respondent, *Winne & Banta* (*Walter G. Winne*, of counsel).

The opinion of the court was delivered by

HEHER, J. This is a proceeding under the Declaratory Judgment Act. *R. S.* 2:26–66, *et seq.* The subject-matter is the liability arising from the levy of the local tax for the

year 1942 against lands of respondent taken in condemnation proceedings instituted by the United States under chapter 307 of the Federal Act of 1931. 46 *Stat.* 1421, *et seq.;* 40 *U. S. C. A.,* §§ 258a, *et seq.*

On October 1st, 1941, the lands were assessed for local taxation pursuant to *R. S.* 54:4–1, *et seq.;* and on January 2d, 1942, the local tax collector submitted to the landowner a preliminary tax bill for the first and second quarters of the tax year at the rate fixed for the previous year, amounting to $51,017.94, payable on February 1st and May 1st. This sum was paid on the ensuing January 6th, less a regularly established discount of 2% for payment in advance. On May 2d, 1942, the United States instituted the condemnation proceeding by filing in the Federal District Court for the District of New Jersey a petition and declaration of the taking of the land in fee-simple absolute for public use, and depositing in the court, to the use of the persons entitled thereto, the sum estimated to be just compensation for the land taken, and thereby and in virtue of section 1 of the cited statute (40 *U. S. C. A.,* § 258a), title to the land vested in the United States, and "the right to just compensation" therefor vested in the persons entitled thereto, the compensation to be "ascertained and awarded in said proceeding and established by judgment therein." The court was empowered, upon the filing of the declaration of taking, "to fix the time within which and the terms upon which" possession of the lands shall be surrendered. The final tax levy upon the land for 1942 was $56,162.61. The judgment for compensation subsequently entered was greater than the amount of the deposit.

The Federal District Court ruled that, although the United States acquired title to the land in fee-simple, the title was subject to an inchoate lien for all unpaid installments of taxes for the year 1942 alleged to be due the taxing district, and thus a cloud was placed on the title by imposing the taxes upon the United States. *United States* v. *25,936 Acres of Land,* 57 *Fed. Supp.* 383. The Circuit Court of Appeals reversed the judgment. 153 *Fed. Rep.* (2d) 277. It was there held that "the amount of compensation to be paid must be determined as if the property was in a single ownership

and without reference to conflicting claims or liens;" that a condemnation proceeding "is not a taking of rights of persons in the ordinary sense but an appropriation of the land or property itself," with all "previous existing estates or interests in the land * * * obliterated;" and that "The condemnation award when made stands in the place of the land and the rights of all persons may be treated as though transferred to the award," and "Valid tax liens must be satisfied from the award." Whether or not the borough has a lien on the fund for the unpaid balance of the 1942 taxes levied was found to be a question of state law; and the cause was remanded for the litigation of the controversy in the state courts. There remains on deposit in the Registry of the Federal District Court sufficient of the compensation award to cover the amount of the conflicting claims.

This proceeding was thereupon commenced. The Supreme Court, in an unreported opinion, concluded that the tax liability is divisible "proportionately to the respective periods of ownership during the tax year," and one-third of the whole tax is chargeable to the landowner whose title was condemned. The borough appeals.

The primary insistence is that the making of the assessment for taxation on the prior October 1st fixed the liability of the land for taxes for the entire year, and this obligation is dischargeable only by payment of the amount of such taxes thereafter determined to be due.

The argument, in brief, is that under *R. S.* 54:4–1, *et seq.,* the tax liability becomes "established" as of the assessment date, even though the amount thereof "is not ascertainable until months thereafter," and the fixation (section 54:5–6) of December 1st as the date when the unpaid taxes becomes a lien upon the lands is merely in aid of the collection of delinquent taxes by establishing "a beginning point for the commencement of enforcement proceedings against delinquent taxpayers;" and that "the lien which would otherwise have attached to the land was transferred to the fund in court." The case of *Jersey City* v. *Montville,* 84 *N. J. L.* 43 ; *affirmed,* 85 *Id.* 372, is cited in support of this proposition. We take a different view.

Chapter 266 of the laws of 1933 (*Pamph. L., p.* 716, § 7; *R. S.* 54:4–66) provides for installment payment of taxes on the first days of February, May, August and November, in default of which "they shall become delinquent." Here, the first two installments for the current year had been paid and there were no delinquent taxes when the United States acquired title to the lands. And, if we assume *arguendo* that there was then a lien upon the lands for the undetermined balance of taxes for the current year, the tax liability is nevertheless apportionable on a *pro rata* basis as provided by *R. S.* 54:4–56.

But it is said that section 54:4–56 is applicable only to "two successive owners *inter sese*," and has no reference to "a situation where the municipal authority was not the condemning authority." This point is obviously without substance. The statute is all inclusive as respects the passing of title in condemnation proceedings. It encompasses all cases where title is taken by a "condemning body." The original act was amended in this respect in 1933 (*Pamph. L., p.* 878, *ch.* 334), following the determination of the case of *Empress Manufacturing Co.* v. *Newark,* 109 *N. J. L.* 131, wherein it was held that the original apportionment act covered only voluntary conveyances, and had no application to a taking by the exercise of right of eminent domain.

It is suggested, however, that if the apportionment statute, as amended, embraces condemnation proceedings, the act was not applied in accordance with its terms, in that the amount of the taxes for the year in question had not been determined when the United States took title to the lands, and the apportionment should have been made on the basis of the prior year's taxes rather than "the amount finally determined for 1942." This point, too, is untenable.

A construction that would require an apportionment of the tax on the basis of the previous year's assessment, even though the tax for the current year had been determined when the condemnation award was made and the amount became payable, would be wholly artificial and a disservice to the obvious legislative intention. The legislative design was to secure to the municipality a *pro rata* apportionment of the tax as-

sessed for the current tax year, neither more nor less, and to impose the correlative burden on the landowner whose title was taken. There is a manifest distinction between voluntary conveyances and the passing of title in condemnation proceedings under an act such as we have before us. In the former class, the date for the transfer of title is appointed by the conventional act of the parties, with knowledge of the statute providing for an apportionment of the taxes for the current year as of the date so fixed in the absence of a stipulation *contra*. It is intended to be a final consummation of the agreement, with nothing *in fieri*. The delivery of the deed and the payment of the purchase price are simultaneous acts. In the latter class, the transfer of title is *in invitum;* and, where there is no acceptance by the landowner of the amount deposited as the fair value of the land, and the question of value awaits future determination in the condemnation proceeding, which was merely initiated by the filing of the petition and the declaration of taking, the sense of the statute is that the apportionment of the tax shall be on the basis of the current year's final levy, if determined at the time when the condemnation award becomes payable. The award when made represents the property. It is to be observed that in such cases there is no automatic transfer of the right of possession; as we have seen, the court fixes the time and terms of the surrender of possession.

The statute is not to be given an arbitrary construction, according to the strict letter, but one that will advance the sense and meaning fairly deducible from the context. It is to be reasonably construed with reference to the central purpose of the entire enactment. The general intent is to be kept in view in ascertaining the scope and meaning of any part. The obvious definite purpose of the law giver is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. The plain intention always prevails over the literal sense of the terms; the reason of the enactment will prevail over the strict letter. *Lewis Sutherland Statutory Construction (2d ed.)*, §§ 368, *et seq.* It is not "the words of the law, but the internal sense of it that makes the law." *Eyston* v. *Studd, 2 Plowd.* 459 (at *p.*

465); 75 *English Reprint* (695). If the sense and reason of the enactment find expression in the instrument as a whole, it is to be effectuated accordingly. As pointed out by Judge Biggs in his opinion *supra* for the Circuit Court of Appeals, the condemnation award, "when made," stands in place of the land, and "the rights of all persons" are treated as though transferred to the award. The validity and *quantum* of an asserted tax lien are then determinable, for valid tax liens are payable out of the award; and if the tax for the current year has then been finally fixed, the apportionment is to be made accordingly.

And the payment of the first two installments of the 1942 tax was not voluntary in the sense of the holding in the cases of *Davenport* v. *City of Elizabeth*, 41 *N. J. L.* 362, and *Koewing* v. *West Orange*, 89 *Id.* 539, and therefore not recoverable.

Respondent's right to a refund of the overpayment is grounded in the statute. *R. S.* 54:4–66 provides for quarterly payments of the local tax, the first and second on the basis of the total tax levy for the prior year, and the third and fourth installments to cover the full tax levied for the current year, less the amount paid as the first and second installments, and directs that "An appropriate adjustment by way of discount shall be made, if it shall appear that the total of the first and second installments exceeded one-half of the total tax as levied for the year." *R. S.* 54:4–69 also provides that should the amount paid for the current year's tax be in excess of the tax or assessment levied, the collecting officer shall, on or before December 1st of the current year, "refund the amount of the excess so paid." The statutory provision for the payment of the current tax in quarterly installments, the first two before the tax is finally determined, is in aid of municipal financing; and the duty of payment is imposed upon the landowner by force of law. But the statute also lays upon the municipality the reciprocal obligation to make a refund if, when the tax is definitely determined, an overpayment is shown; and this obligation is enforceable by the landowner.

But the landowner is not entitled to interest on the overpayment; and in this the Supreme Court fell into error.

It is the general rule that interest is not recoverable on an abatement of a tax liability unless provision therefor is made by statute. *Hahne Realty Corp.* v. *Newark,* 119 *N. J. L.* 12. The statutory scheme here negatives an intention to require interest on the overpayment. As stated, these statutory provisions were designed in aid of local governmental financing, and a construction that would compel the payment of interest on such tax abatements would result in disarranging local budgets and in a measure defeating the statutory purpose to be served by installment payments of taxes.

The judgment is accordingly modified and, as so modified, affirmed.

*For modification*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, COLIE, WACHENFELD, BURLING, WELLS, DILL, FREUND, MCLEAN, SCHETTINO, JJ. 12.

*For reversal*—None.