9W CONTRACTORS, INC., PLAINTIFF, v. ENGLEWOOD CLIFFS BOROUGH, DEFENDANT.

VIRGINIA FAUST, PLAINTIFF, v. ENGLEWOOD CLIFFS BOROUGH, DEFENDANT.

Tax Court of New Jersey

September 17, 1980.

*Richard Nashel* for plaintiffs.

*Melvin Gittleman* by *Edwin C. Eastwood, Jr.* for defendant.

EVERS, J. T. C.

Plaintiffs, 9 W Contractors, Inc. and Virginia Faust (taxpayers) moved to have judgments entered for the tax years 1976 and 1977 pursuant to *N.J.S.A.* 54:2–43 (Freeze Act) on the basis

of judgments entered for 1975. Secondly taxpayers seek an order compelling the defendant Englewood Cliffs Borough (borough) to refund to the taxpayers excess taxes paid together with interest for the tax years 1973 through 1977. The taxpayers' claim for interest is based on statutory and constitutional grounds and equitable principles. In regard to the latter it should be noted that the Tax Court is vested with the authority to make such findings and conclusions and to enter such orders as the equities of the matter may require by virtue of the equitable powers delegated to it in *N.J.S.A.* 2A:3A–4 which states: (a) "The Tax Court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined."

Taxpayers paid the entire tax for each year. With the exception of tax credits allowed in the amount of $3,134 no excess tax payments were refunded nor was any interest paid by the borough. In December 1979 borough tendered payment of the excess taxes, without interest, but taxpayers refused such offer.

Borough did not contest the imposition of the Freeze Act to the 1976 and 1977 tax years nor did it deny that taxpayers are entitled to refunds in the total amount of $38,980.44 which sum includes refunds for 1976 and 1977.[1] It resists payment of pre–judgment interest claiming that such interest is not provided for by statute. Borough further argues that taxpayers are barred from raising the issue of pre–judgment interest under the "entire controversy" doctrine and laches. Lastly it argues that the constitutional arguments presented by taxpayers cannot prevail as taxpayers failed to notify the Attorney General of the State of New Jersey of such arguments pursuant to *R.* 4:28–4.

*N.J.S.A.* 54:2–43 (Freeze Act) provides that where a judgment final has been rendered by the Division of Tax Appeals such

---

[1] $29,072.90 for 9W Contractors, Inc. and $9,907.54 for Virginia Faust.

judgment shall be binding for the assessment year and the two succeeding years except where a change in value has occurred after the assessing date. The binding effect of the "freeze" ceases with the year immediately preceding the year in which a revaluation becomes effective.

■ The undisputed affidavit of taxpayers' expert appraiser clearly shows that no change in value occurred following the assessment. It is further undisputed that no revaluation became effective during any of the years in question. Accordingly, judgments will be entered for 1976 and 1977 in accordance with the 1975 judgment of the Division of Tax Appeals and said years will be included in the court's determination of taxpayers' second argument concerning interest.

■ Borough's interpretation of R. 4:28–4 with respect to taxpayers' constitutional argument is erroneous. It is only where the validity of a statute, executive order, franchise or constitutional provision of this state is questioned that the party raising the question is required to give notice of the pendency of the action to the Attorney General. Such is not the case here where the taxpayers do not attack a statute or a constitutional provision but, to the contrary, seek the payment of interest on the basis of statutory and constitutional grounds. Accordingly, I find that R. 4:28–4 has no application here.

The course of litigation surrounding these matters was lengthy and involved and was finally concluded on January 16, 1979 when taxpayers' Petition for Certification was denied by the Supreme Court. Counsel for taxpayers notified borough of such denial on January 23, 1979. According to taxpayers borough did not consent to a form of judgment implementing the decision of the Appellate Division until July 23, 1979. On August 8, 1979 and again on September 12, 1979 taxpayers requested borough to refund the excess taxes paid together with interest. On December 31, 1979 taxpayers received vouchers from borough which made no provision for payment of interest. Taxpayers did not execute the vouchers and on January 18, 1980 demanded vouchers for both refunds and interest. No such vouchers having been received, taxpayers brought this motion.

In addressing the "entire controversy" doctrine Judge Pressler in *Wm. Blanchard Co. v. Beach Concrete Co., Inc.*, 150 *N.J.Super.* 277, 293, 375 *A.2d* 675 (App.Div.1977) observed that, as a practical matter, the doctrine cannot be dealt with on an a priori basis and must be applied empirically.

> That it to say, an evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not that component constitutes either an independent cause of action by technical common–law definition or an independent claim which, in the abstract, is separately adjudicable.

> The point, of course, is that a component of the controversy may not be unfairly withheld, see *State v. Gregory*, supra, 66 *N.J.* at 518, and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game.

Under the circumstances here present I do not view taxpayers' claim for interest as being barred by the entire controversy doctrine. Certainly the interest claim, even if viewed as a component part of the controversy was not unfairly withheld and certainly its effect cannot be deemed to render taxpayers' claim for a tax reduction as being "merely one inning of the whole ball game". In that connection it must be observed that until a judgment final was entered for 1975, taxpayers could not seek the application of the Freeze Act as to 1976 and 1977 and thus no claim for interest could even have been made as to those years. A contrary finding would require the appealing taxpayer to frame a complaint on the basis that if a reduction is granted and judgment entered thereon and if the Freeze Act applied to the two succeeding years then interest should be allowed thereon. A complaint based on such hypotheses is not contemplated by the doctrine nor is it within its spirit and intent.

Borough's dependence on the defense of laches to taxpayers' claim must also fail. Laches involves more than mere

delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party. See *West Jersey Title &c. Co. v. Industrial Trust Co.*, 27 *N.J.* 144, 141 *A.*2d 782 (1958).

Here, even if there was a delay by taxpayers in pursuing their claim–and the facts support no such finding–it cannot be said that any such delay prejudiced the borough. Indeed, the facts might suggest that a contrary argument could be reasonably made.

Pursuant to *N.J.S.A.* 54:3–27.2 and general principles of constitutional due process, it is taxpayers' position that they are entitled to interest on the excess tax payments as follows:

(1) Eight per cent (8%) per annum from the date of payment until January 31, 1978;

(2) Five per cent (5%) per annum from February 1, 1978, until 60 days following the final judgment (the denial of movants' Petition for Certification by the Supreme Court), or March 16, 1979;

(3) The prevailing commercial rate–or the average of prevailing rates–from March 16, 1979 until the date of payment.

*N.J.S.A.* 54:3–27.2 provides in pertinent part;

In the event that a taxpayer is successful in an appeal from assessment on real property, the respective taxing district shall refund any excess taxes paid, together with interest thereon from date of payment at a rate of five (5%) per cent per annum, within sixty (60) days of the date of final judgment.

This statute was amended in 1977, effective January 31, 1978, to reduce the interest from eight per cent per annum to five per cent per annum and to give the municipality sixty, instead of fifty, days from final judgment to make refund. The prior statute, with interest at the rate of eight per cent was enacted in 1976 and was effective January 1, 1977.

Taxpayers argue that, notwithstanding the fact that the effective date of *N.J.S.A.* 54:3–27.2 as originally enacted was January 1, 1977, interest should be paid on the 1973, 1974, 1975 and 1976 excess tax payments. They claim that the statute was intended to encompass pending appeals dealing with prior years as well as those appeals filed for 1977 and thereafter. In support of this position they rely on the statement of the Senate

Revenue, Finance and Appropriations Committee regarding Assembly Bill 1276, the precursor to *N.J.S.A.* 54:3–27.2. The statement provides in pertinent part as follows:

> The effective date of the Bill has been amended to have the provisions of the Bill effective commencing with the tax year next following enactment. Thus, all appeals from that tax year forward will be affected. Any appeals under the existing statutes will be treated in the same manner, thereby providing equal treatment to all taxpayers.

Taxpayers further argue that denial of interest for the periods requested would violate their constitutional rights not to be deprived of property without due process of law. For the same reason they claim that interest at the prevailing commercial rate should be paid from March 16, 1979 (sixty days following the denial of the Petition for Certification). Any lesser rate, according to taxpayers, would, in effect, reward borough's dilatory behavior and deprive taxpayers of the rightful use of their money. In support of these arguments they rely on *Proctor and Gamble Distributing Co. v. Sherman*, 2 F.2d 165 (S.D.N.Y.1924); *LaSalle National Bank v. Edward J. Rosewall, et al*, 604 F.2d 530 (Seventh Cir. 1979); and *713 Co. v. Jersey City*, 94 *N.J.Super.* 210, 227 *A.*2d 530 (Law Div.1967). In *Proctor*, Judge Learned Hand stated:

> [I]t seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all. Whatever may have been our archaic notions about interest, in modern financial communities a dollar today is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well–settled beliefs about value. The present use of my money is itself a thing of value, and, if I get no compensation for its loss, my remedy does not altogether right my wrong.

In *LaSalle*, the court noted that the amount of the tax assessed against plaintiff's property was blatantly illegal and that plaintiff's only remedy at law was to pay the full amount of the tax claimed and thereafter sue for a refund.

In *713 Co.*, the Law Division Judge found no legitimate reason for a delay of some nine months before excess tax payment refunds were made and allowed taxpayer's claim for interest.

An examination of the several statutes bearing on the subject of interest on excess tax payments and not just *N.J.S.A.* 54:3–27.2 is necessary for a proper consideration of taxpayers' arguments. Initially *N.J.S.A.* 54:3–27 (*P.L.*1918, *C.* 236, *Sec.* 703) provided in pertinent part; "Any taxpayer who shall file an appeal from an assessment against him may pay to the collector of the taxing district such portion of the taxes assessed against him as he would be required to pay in the event of his appeal being sustained, . . .". That section was amended by *P.L.*1938, *C.* 151, *Section* 1 which provided that the payment mentioned above "shall in no wise prejudice the status of the appeal or the rights of the appellant . . ."

In that circumstance the taxpayer would generally pay only the portion of the taxes not in dispute and any excess payment was deemed to be voluntary.

The classic case on that point is *Hahne Realty Corp. v. Newark*, 119 *N.J.L.* 12, 194 *A.* 191 (*E. & A.* 1937). There a taxpayer appealed to the State Board of Tax Appeals from a dismissal of his appeal to the county board of taxation. While the appeals were pending the taxpayer paid the taxes in full. The State Board of Tax Appeals decision resulted in an abatement of the taxes paid in the sum of $16,454.20. Although the taxing district tendered that sum to the taxpayer it was refused unless interest on the excess payment was added. The court, after quoting *N.J.S.A.* 54:3–27 (*P.L.*1918, *C.* 236, *Sec.* 703) stated, at page 16, 194 *A.* 191:

> This, we think, is indicative of legislative intent that abatement of taxes should not bear interest. The taxpayer has it in his power, if he intends to challenge the assessment, to pay on an assessment that he conceives to be just and it is the duty of the taxing authority to receive it and to give him the proportionate discount if payment is made in advance just as if payment of the assessment, as stated, was made in full. Where the taxpayer believes the assessment is too high he is under no compulsion to pay except the sum he admits to be due.

Continuing and noting that there was no compulsion on the taxpayer to pay the full amount of taxes, the court said:

> No demand was made that the taxes be paid on the particular dates on which they were paid. Where the taxpayer, as here, pays the taxes called for by the assessment of valuation, though he disputes the amount thereof, in advance of a

hearing of the appeal, it seems clear that the payment is voluntarily made and at the risk of the taxpayer. The assessment was not illegal *per se*. The valuation was too high–an error of judgment on the part of the assessor whose duty it is, under the statute, *supra* (section 202), to assess real and personal property at true value. The power to levy a proper tax was not wanting–there was no infirmity in the proceeding of making the assessment as was the situation in the cases upon which appellant relies. The excessive assessment was a mistake of fact. The appellant did not choose to retain that part of the tax money which it believed to be in excess of the true valuation, as it might have done legally, and litigate about the excess. It elected to pay first and litigate later. Under these circumstances, we do not think the amount of taxes abated should carry interest.

In *Edgewater v. Corn Products Refining Co.*, 136 *N.J.L.* 664, 57 *A.*2d 39, (*E. & A.* 1947), the court, in denying interest on the rebate of an excessive payment of municipal taxes, said at page 670: "It is the general rule that interest is not recoverable on an abatement of a tax liability unless provision therefor is made by statute".

In *713 Co. v. Jersey City*, supra, the court said: "It is a well settled rule of law in New Jersey that interest is not recoverable on an abatement of a tax liability unless provision therefor is made by statute".

By *P.L.*1968, *C.* 365 the legislature provided:

*N.J.S.A.* 54:2–41.5. In any appeal to the Division of Tax Appeals . . . from a judgment of a county board of taxation heretofore instituted and pending on the effective date of this Act or hereafter instituted, the taxpayer, notwithstanding the provisions of any other law, shall, upon order of the Division of Tax Appeals, be required to pay . . . not less than 75% of the full amount of the taxes that would have been payable had the said appeal to the Division not been instituted. Such payment shall be subject to a refund of any excess taxes paid together with interest thereon at a rate equal to the rate charged by the taxing district on delinquent taxes. . . . Any such refund shall be paid by the taxing district within fifty (50) days from the date of the judgment; . . .

It is to be noted that the enactment of *N.J.S.A.* 54:2–41.5 did not repeal or in any way impair the provisions of *N.J.S.A.* 54:3–27 pursuant to which the taxpayer could pay only the taxes that he would be required to pay if his appeal was sustained. As previously noted any payments beyond that amount were deemed voluntary and would carry no interest in the event of a refund. However where the amount paid was less than 75% of the amount due if the assessment was not challenged the taxing district, by virtue of *N.J.S.A.* 54:2–41.5 could, by obtaining an

order from the Division of Tax Appeals, compel a 75% payment. The legislature recognized that excess payment in that instance was not voluntary and provided for payment of interest thereon.

When the taxpayers paid the 1973, 1974, 1975 and 1976 taxes the only statute authorizing the payment of interest was *N.J. S.A.* 54:2–41.5. However, interest was due only in the event the taxpayer was compelled to pay, in the final analysis, excess taxes pursuant to an order of the Division of Tax Appeals. No such order was issued here and thus the interest provisions of *N.J.S.A.* 54:2–41.5 do not apply to 1973, 1974, 1975 and 1976.

It is that compulsion to pay in order to prosecute a tax appeal in the first instance which distinguishes *Proctor & Gamble*, supra and *LaSalle*, supra from the situation which existed here from 1973 through 1976. Judge Hand noted that it was an inadequate remedy to disallow interest after "... taking away a man's money *as a condition of allowing him to contest his tax*". [emphasis supplied]. Again, in *LaSalle*, the court noted that "... plaintiff's *only remedy* at law *was to pay the full amount of the tax claimed and thereafter to sue for a refund*". [emphasis supplied].

On March 3, 1976 *P.L.*1975, *C.* 361 was enacted which repealed *N.J.S.A.* 54:2–41.5 and amended *N.J.S.A.* 54:3–27 to provide that an appealing taxpayer shall pay no less than 90% of the taxes assessed even though his petition may request a deduction in excess of 10% of the assessed taxes. As amended it further provided that the taxing district shall refund any excess taxes by the successful taxpayer together with interest at eight per cent thereon from the date of payment within fifty days of the date of judgment. The Act became effective "for purposes of the tax year next following enactment and thereafter". It thus became effective January 1, 1977. Clearly such excess tax payments cannot be deemed to be voluntarily made in that year.

On January 31, 1978 *N.J.S.A.* 54:3–27 was again amended and supplemented by *P.L.*1977, *C.* 357 which provided that an appellant shall pay the first three quarters taxes in prosecuting an appeal to the county board. *Section 2* of the Act (amending

*N.J.S.A.* 54:2–39) was amended to provide for payment of all taxes for the tax year in prosecuting an appeal before the Division of Tax Appeals. *Section 3* of the Act, *N.J.S.A.* 54:3–27.2, provided that the taxing district shall refund any excess taxes paid, together with interest thereon from the date of payment at a rate of five per cent per annum, within sixty days from the date of final judgment. These amendments did not disturb the compulsive nature of the tax payments and thus any such payments were not deemed to be made voluntarily.

In summary it is clear that no interest is due on refunds where the excess tax payments were voluntarily made. It is just as clear that unless provided for by statute no interest is due on excess payments in any event. As to 1973, 1974, 1975 and 1976 therefore, unless *N.J.S.A.* 54:3–27.2 applies retroactively as contended by the taxpayers, pre–judgment interest cannot be allowed.

No authority is cited by taxpayers in support of their position. They rely solely on the statement attached to the Assembly Bill. However, a careful reading of that statement indicates that the provisions of the statute are effective commencing with the tax year next following enactment. All appeals from the tax year forward will be affected. The bill also states the new provision commences with a new tax year. That statute has an effective date of January 31, 1978. The predecessor to that statute had an effective date of January 1, 1977. Clearly, these statutes are not applicable to the 1973, 1974, 1975 and 1976 tax years.

A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the legislature cannot otherwise be satisfied. *Kopczynski v. County of Camden,* 2 *N.J.* 419, 424, 66 *A.*2d 882 (1949); *Skulski v. Nolan,* 68 *N.J.* 179, 343 *A.* 2d 721 (1975).

There is no terminology in the enactments set forth in *P.L.* 1975, *C.* 361 and *P.L.*1977, *C.* 357, *ante,* from which it might be inferred that a retrospective construction was intended by the legislature. It would require language such as was set forth in *P.L.*1968, *C.* 365 (since repealed), *ante,* which provided that interest was to be paid on the abated taxes in connection with

any appeal *"heretofore instituted* and pending on the effective date of this Act or *hereafter instituted."* [emphasis supplied].

Since the statute was enacted on March 3, 1976, the plain meaning of the language "This Act shall take effect for purposes of the tax year next following enactment and thereafter" is that it was to take effect for the tax year 1977 and thereafter and could have no effect with respect to the payment of taxes prior to 1977.

The principle was pointed out in *Brasko v. Duchek,* 127 *N.J.Eq.,* 567, 14 *A.*2d 477 (Prerog.Ct.1940) where the court said, at page 569, 14 *A.*2d 477:

The general rule is that a statute which expressly provides that it shall become effective on a certain date in the future is to be construed in the same manner as if it had been enacted on that date, that it speaks only from the date on which it is to go into effect, and has no force or effect whatever until the arrival of that date.

Under the circumstances taxpayers are entitled to no pre–judgment interest on refunds due for the years 1973 through 1976.

By virtue of the provisions of *N.J.S.A.* 54:3–27 and *N.J. S.A.* 54:3–27.2, which became effective for the 1977 tax year, I find taxpayers are entitled to pre–judgment interest on the excess 1977 taxes at the rate of eight per cent. Since the Act required payment of only 90% of the taxes due, it may be argued that where 100% of the taxes had been paid 10% of the payment was voluntary and thus no interest is due on that portion. That argument runs contrary to what I perceive to be the obvious legislative purpose which was to encourage the appellant to pay its taxes in full by providing that the taxpayer shall pay *no less* than 90%. [emphasis supplied]. The reasonable inference to be drawn from that language is that the legislature intended that more than 90% be paid if the taxpayer consented to do so.

Additionally, in paragraph 2 of *N.J.S.A.* 54:3–27 is found the language "... payment of part *or all* shall in no wise prejudice the status of the appeal ..." [emphasis supplied]. This again is indicative of an intent that a taxpayer should not be adversely

affected by paying more than 90%. Lastly, *N.J.S.A.* 54:3–27.2 states "... the taxing district shall refund *any excess taxes with interest thereon*". [emphasis supplied]. This point was clearly made when, with the amendment effective January 31, 1978, the legislature decreed that *all* taxes must be paid (in order to prosecute an appeal at the state level) and that the taxing district shall refund any excess taxes together with interest thereon at a rate of five per cent. [emphasis supplied].

In view of the foregoing taxpayers are entitled to and shall receive interest on the 1977 excess tax payments at the rate of eight per cent from the date of such payments [2] to January 31, 1978 at which time the statutory interest was reduced to five per cent. The judgments became final on January 16, 1979 when the Petition for Certification was denied. Pursuant to *N.J.S.A.* 54:3–27.2 all excess tax refunds together with interest (in this case for 1977 refunds only) should have been paid within 60 days thereafter or no later than March 17, 1979. Consequently interest has accrued on the 1977 excess taxes at the rate of five per cent from January 31, 1978 to March 17, 1979.

No explanation was offered by borough for the delay in refunding the excess tax payments. It is clear however that until December 31, 1979, in spite of the demands made by taxpayers no payments, nor offers of payment, were made by the borough. By withholding the monies it is reasonably concluded that certain benefits accrued to the borough while taxpayers lost the use of money which was rightfully theirs. The question to be resolved then is at what point did the retention of the excess tax funds together with interest on the 1977 tax payments become wrongful.

Confronted with a similar question in *713 Co. v. Jersey City,* supra, the court, in its exercise of discretion upon equitable principles concluded that the taxpayer was entitled to interest but that such interest would not commence to accrue until 75

---

[2] The record does not disclose the specific date(s) of such payment(s) but such date(s) are readily ascertainable by the parties.

days from the date of judgment. The court allowed 45 days for the period within which the city had the right to appeal and an additional 30 days to facilitate the necessary and formal resolution to provide for the payment of the refund.

Here the initial appeal was filed in December 1973 with appeals thereafter filed in 1974 and 1975. Hearings were conducted before the Bergen County Tax Board, the Division of Tax Appeals and the Appellate Division of the Superior Court. In October 1978 the Appellate Division released its opinions. No Petition for Certification was filed by the borough from those decisions and they became final in January 1979 when the taxpayers' Petition was denied. It cannot be believed that borough was not aware of every aspect of the case during the over five years of litigation. It took no action when the Appellate Division decisions were rendered and it took no action when those decisions became final. In short, it did nothing but retain and use taxpayers' funds for its own benefit.

In 1967 the court in *713 Co. v. Jersey City*, supra, did not have the benefit of the provisions of *N.J.S.A.* 54:3–27.2 which provide for a 60 day period to make such payments and thus allowed a 75 day period for such action. With the adoption of *N.J.S.A.* 54:3–27.2 the legislature obviously concluded that 60 days constituted a reasonable period within which the municipality should act. It is not for this court to disagree with that conclusion and accordingly I find that the borough was charged with the duty of making payment to taxpayers no later than March 17, 1979. I further find that the unreasonable delay in returning the monies due and owing on these judgments beyond March 17, 1979 warrants the payment of interest at the rate of 10% which I find to be fair and reasonable during the period in question.

■■■ It is lastly to be observed however that regardless of the delay in making payment borough, on December 31, 1979, did tender the tax overpayment to taxpayers. This tender was refused. Taxpayers should have accepted this offer while reserving their rights to litigate the question of interest. In declining to do so they forfeited their rights to collect interest beyond December 31, 1979.

In light of the above an Order will be entered directing borough to refund to 9W Contractors, Inc. the sum of $29,072.90 together with interest on $6,432.20 which is the amount of refund due for 1977. Commencing with the dates of payment of the 1977 excess taxes until January 30, 1978 interest will be paid at the rate of eight per cent. From January 31, 1978 to March 17, 1979 (411 days) interest will be paid at five per cent and thence on the total sum at the rate of 10% from March 18, 1979 through December 31, 1979 (288 days).

As to Virginia Faust an Order will be entered directing the borough to refund the sum of $9,907.54 together with interest on $2,117.22 which is the amount of the refund due for 1977. Interest will be computed at the same rates and for the same time periods as set forth above.

The Orders shall further provide that full payment shall be made by borough to taxpayers no later than 60 days following the date of the Orders. In the event such payments are not so made interest will accrue thereon at the rate of 12%.

I direct the Clerk of the Tax Court to enter Orders in accordance with the above.