185 N.J. Super. 152 (1982)
447 A.2d 927
JACK FRIEMAN, INDIVIDUALLY AND D/B/A HAMILTONIAN APARTMENTS, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF RANDOLPH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND STEPHEN P. ARTHUR, TAX COLLECTOR OF THE TOWNSHIP OF RANDOLPH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1982.
Decided June 2, 1982.
*153 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Ralph Neibart argued the cause for appellant (David Mandelbaum, of counsel).
Edward J. Buzak argued the cause for respondents (Villoresi & Buzak, attorneys).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
*154 The facts in this case are undisputed. Plaintiff, individually and doing business as Hamiltonian Apartments, was the owner of property in defendant Randolph Township known as 100 Center Grove Road during the years pertinent to the issues in dispute; defendant Stephen P. Arthur is the Tax Collector for the township. Plaintiff paid his real estate taxes in full each year between 1974 and 1978 as they became due, and filed timely appeals to the Morris County Board of Taxation. The county board affirmed the original assessments for each tax year. Plaintiff appealed those determinations to the former Division of Tax Appeals. While those appeals were pending in the Division of Tax Appeals, the proceedings were transferred to the newly created Tax Court pursuant to N.J.S.A. 2A:3A-26 in accordance with I. 1978, c. 33, effective July 1, 1979 (compiled as N.J.S.A. 2A:3A-1 to 29).
On May 5, 1980, pursuant to settlements agreed upon by the parties, judgments were entered by the Tax Court reducing the assessments for each year. Thereafter, the tax refunds due plaintiff were computed by the township and on May 13, 1980 the township informed plaintiff's attorney of the amount which would be refunded.[1]
*155 Plaintiff's attorney informed defendants that he had calculated the interest due on the overpayments for 1974, 1975, 1976, 1977 and 1978 as follows:

Date of payment Interest from
by plaintiff of date of payment
excess taxes Excess tax paid to 5/5/80 at 5% 
11/1/74 $ 16,915.99 $ 4,661.16
11/1/75 21,938.85 4,948.25
11/1/76 23,016.79 4,040.53
11/1/77 19,387.35 2,434.04
11/1/78 30,364.95 2,294.00
 _________ ________
 $111,623.93 $18,377.98

Thus, while defendants admitted to owing $6,498.88 in prejudgment interest (for 1977 and 1978), plaintiff claimed he was owed $18,377.98 in prejudgment interest (for 1974 through 1978). Both parties relied on N.J.S.A. 54:3-27.2 as support for their positions.
The Tax Court judge, relying on 9W Contractors, Inc. v. Englewood Cliffs, 1 N.J. Tax 465 (1980), held that plaintiff was not entitled to any interest for those overpayments made for 1974, 1975 and 1976.
At the time defendant paid his taxes as assessed in full for 1974, 1975 and 1976, N.J.S.A. 54:3-27 provided in pertinent part:
A taxpayer who shall file an appeal from an assessment against him may pay to the collector of the taxing district such portion of the taxes assessed against him as he would be required to pay if his appeal were sustained.
*156 Thus, prior to the passage of N.J.S.A. 54:2-41.5 and 54:2-41.6 in 1968, a taxpayer could appeal the assessment to the county board and to the State Division of Tax Appeals without being required to pay that portion of the taxes which were in dispute. The statute was silent as to the payment of interest by the taxing district on any overpayments which might eventually have been determined as a result of such an appeal. It became well settled that any excess payment of taxes made by a taxpayer on an appeal that reduced the taxes below the amount paid was deemed voluntarily made at his risk, and that the taxpayer would not be entitled to interest on any refund which resulted from his successful appeal. See Hahne Realty Corp. v. Newark, 119 N.J.L. 12 (E.&A. 1937), where the court found it to be the legislative intent behind L. 1918, c. 236, § 703 (N.J.S.A. 54:3-27) that the abatement of taxes which are not illegal per se but only represent an error in judgment by the assessor, not bear interest:
Where the taxpayer believes the assessment is too high he is under no compulsion to pay except the sum he admits to be due.
... Where the taxpayer, as here, pays the taxes called for by the assessment or valuation, though he disputes the amount thereof, in advance of a hearing of the appeal, it seems clear that the payment is voluntarily made and at the risk of the taxpayer.... The appellant did not choose to retain that part of the tax money which it believed to be in excess of the true valuation, as it might have done legally and litigate about the excess. It elected to pay first and litigate later. Under these circumstances, we do not think the amount of taxes abated [by decision of the state board of tax appeals] should carry interest. [at 16-17]
Cf. Rice v. Newark, 136 N.J. Eq. 53, 55 (Ch. 1944) (Chancery should prevent the clouding of title by a tax sale until the taxpayer's appeal is decided by the state board); Milmar Estate, Inc. v. Fort Lee, 36 N.J. Super. 241, 247-248 (App.Div. 1955) (municipality not liable for interest on a tax refund on land which had been condemned by the State), and 713 Co. v. Jersey City, 94 N.J. Super. 210, 214-215 (Law Div. 1967) (interest for overpayments prior to the judgments is not recoverable on an abatement of a tax liability but awarding interest from the 75th day following judgment to the date the refunds were tendered).
*157 Also in effect during the tax years in question was N.J.S.A. 54:2-39 which set forth the procedure to be followed by an appellant who was dissatisfied with the judgment of the county board of taxation. That statute did not require payment of any taxes when one filed an appeal to the Division of Tax Appeals beyond that which was required when one filed an appeal to the county board of taxation pursuant to N.J.S.A. 54:3-27.
On March 14, 1968 Senator Dumont introduced Senate Bill 565 (later enacted as L. 1968, c. 365 and compiled as N.J.S.A. 54:2-41.5) which provided, among other things, that in any appeal to the Division of Tax Appeals in which a final judgment was not rendered within six months from the filing of the appeal the taxpayer "shall" pay to the tax collector "not less than 75% of the full amount of the taxes that would have been payable had the said appeal to the division not been instituted." The bill further made such payment subject to a refund of any excess taxes plus interest thereon at a rate equal to one-half[2] the rate charged by the taxing district on delinquent taxes in the event a judgment entered by the Division was in favor of the taxpayer. Such payment was to be made within 50 days. The bill was conditionally vetoed by Governor Hughes on September 10, 1968. In his statement to the Senate the Governor objected to the mandatory and automatic "early" payment of a contested tax which could work an inequity upon a taxpayer (particularly in the case of a modest homeowner to whom the bill applied with equal force as to a "mammoth corporate property owner"), even where a taxing district could suffer no hardship by further delay. The Governor believed that a more equitable solution would be a provision designed to permit each taxing district itself to decide the necessity for early payment. In a case where failure to pay the taxes would work hardship on the district, the district could apply for and obtain from the Division an order to *158 pay pending appeal. An amended bill, with all of the Governor's recommendations, was adopted by the Legislature and was approved by the Governor on December 26, 1968. Thus, as enacted by L. 1968, c. 365, N.J.S.A. 54:2-41.5 and 54:2-41.6 read in their entirety as follows:

N.J.S.A. 54:2-41.5
In any appeal to the Division of Tax Appeals in the Department of the Treasury from a judgment of a County Board of Taxation heretofore instituted and pending on the effective date of this Act or hereafter instituted, the taxpayer, notwithstanding the provisions of any other law, shall, upon order of the Division of Tax Appeals, be required to pay to the collector of the taxing district wherein the property subject to the appeal is located, not less than seventy-five (75%) percent of the full amount of the taxes that would have been payable had the said appeal to the Division not been instituted. Such payment shall be subject to a refund of any excess taxes paid together with interest thereon at a rate equal to the rate charged by the taxing district on delinquent taxes, in the event the judgment of the Division in any such appeal is entered in favor of the taxpayer. Any such refund shall be paid by the taxing district within fifty (50) days from the date of the judgment; provided however, that if agreeable to taxpayer, any such refunds may be paid by the taxing district over a period not to exceed three (3) years.

N.J.S.A. 54:2-41.6
An order of the Division of Tax Appeals providing for payment of seventy-five (75%) percent of the tax pending appeal shall issue upon the motion of any taxing district supported by affidavit or other reliable evidence that (a) no final judgment has been rendered by the Division of Tax Appeals; (b) that more than six (6) months has elapsed from the date upon which the petition of appeal was filed; (c) that less than seventy-five (75%) percent of the taxes that would have been payable had the said appeal to the Division not been instituted have been paid; and (d) that failure to require payment of funds prior to the disposition of the appeal may work hardship upon the taxing district. Such motion may be heard and determined by the Division of Tax Appeals upon summary proceedings pursuant to such rules as may be provided by the Division for such purpose. Financial distress of an appellant taxpayer shall not constitute grounds for denying of such order.
Thus, during the 1974, 1975 and 1976 tax years the applicable statutes in effect  N.J.S.A. 54:2-37 (prior to L. 1975, c. 361 and L. 1977, c. 357); N.J.S.A. 54:2-39 (prior to L. 1977, c. 357) and N.J.S.A. 54:2-41.5 and 54:2-41.6 (prior to their repeal by L. 1975, c. 361)  all permitted a taxpayer such as plaintiff to appeal a tax assessment to the county board and to the Division of Tax Appeals without paying that portion of the taxes which he disputed unless a taxing district could demonstrate hardship and *159 obtained an order from the Division requiring early payment of 75% of the assessed taxes. In this case Randolph Township did not seek or obtain an order when plaintiff appealed to the Division and therefore plaintiff's payments on the full amounts assessed are to be considered "voluntary." As such, he is not entitled to interest on those refunds which he successfully obtained through the tax court judgments. Hahne Realty Corp. v. Newark, 119 N.J.L. at 16-17.
Plaintiff argues, however, that the subsequent amendments to N.J.S.A. 54:3-27 and to N.J.S.A. 54:2-39, and the resulting enactment of N.J.S.A. 54:3-27.2, all of which became effective after the 1974, 1975 and 1976 tax years, should be applied retroactively to award him interest on those judgments.
On March 3, 1976 the Governor approved L. 1975, c. 361, which by its terms became effective on January 1, 1977. That law made several major changes in the procedure to be employed on a tax appeal. First, it amended N.J.S.A. 54:3-27 to require a taxpayer who files an appeal from an assessment against him to pay the taxing district "no less than 90% of the taxes assessed against him ... even though his petition to the Tax Appeal Board might request a reduction in excess of ... the taxes assessed for the full year." The statement of the Senate Revenue, Finance and Appropriations Committee attached to the bill explained that the bill intended to address the financial hardship for taxing districts which arises when a taxpayer with a substantial tax liability files an appeal and pays only the taxes he believes are reasonable. A similar hardship could arise where groups of taxpayers file appeals from revaluations. The Statement further recognized that an assessment may not be fair to the taxpayers and some degree of relief to them would be necessary. "Therefore, the payment of 90 percent of tax assessments is felt equitable to both taxpayer and tax district." Assembly Bill 1276, Statement 1 (1975).
Second, the law created N.J.S.A. 54:3-27.2 which required that any overpayment made by the taxpayer as a result of the *160 90% requirement would be refunded within 50 days of the judgment with interest at 8% per year. Thus, according to the statement to the bill, "A taxpayer who is successful in an appeal, having lost the use of his money in meeting the tax payment requirement will be entitled to quick refund together with a reasonable interest payment." Assembly Bill 1276, Statement 2 (1975).
Third, the law repealed N.J.S.A. 54:2-41.5 and 54:2-41.6 (the then current provisions concerning tax payments where the appeal was taken to the Division of Tax Appeals) because those portions of the statute would be "surplus."
Finally, the bill made L. 1975, c. 361 effective "with the tax year next following enactment" (i.e., January 1, 1977). The Statement indicated that the law was to be prospective only:
Thus, all appeals from that tax year forward [i.e. from 1977] will be affected. Any appeals under the existing statutes will be treated in the same manner, thereby providing equal treatment to all taxpayers. The new provision commence with a new tax year.[3] [Assembly Bill 1276, Statement 2 (1975); emphasis supplied]
Thus, with regard to plaintiff's 1977 appeal, he was required by statute to pay at least 90% of the assessment before filing his appeal with the county board of taxation and was entitled to 8% interest per year on his refund from the date of overpayment to the date he was paid.
*161 In 1977 the Legislature once again undertook to change the requirements for a taxpayer to appeal his tax assessments. Three pertinent changes resulted from the enactment of L. 1977, c. 357, which was approved and became effective on January 31, 1978. It amended N.J.S.A. 54:3-27 by reducing the amount of assessed taxes to be paid by the taxpayer when he appeals the assessment to the county board from 90% to "the first three quarters of the taxes assessed against him for the current tax year" even though his petition might request a reduction in excess of one quarter of the taxes assessed for the full year.
It also amended N.J.S.A. 54:2-39 by requiring the taxpayer who appeals the county board determination to the Division of Tax Appeals to pay all taxes for the current tax year.
Finally, it amended N.J.S.A. 54:3-27.2 to provide that where a taxpayer is successful in an appeal from an assessment on real property, the taxing district shall refund any excess taxes paid with interest at the rate of 5% a year (instead of 8%) within 60 days of final judgment (instead of within 50 days of final judgment). In explaining the changes that had occurred in the law over the years, the statement by the Senate Revenue, Finance and Appropriations Committee to Assembly Bill 2147 (L. 1977, c. 357) said:
This bill represents a turnaround in State policy regarding payment of property taxes where an appeal is pending. The presumption in law, prior to P.L. 1975, c. 361, was that an appellant was responsible for paying only that amount of tax which he felt was reasonable as reflected in his appeal. With P.L. 1975, c. 361, a requirement that 90% of current taxes be paid was put in law. This gave rise to the disparity of amount of taxes due related to the point in time that the appeal is filed. The presumption in law in this bill is that a taxpayer is responsible for the taxes assessed against him and the filing of an appeal in no way reduces or forgives that liability.
The foregoing references to the legislative histories and the statutes themselves fully support the position of defendant that plaintiff is not entitled to retroactive application of N.J.S.A. 54:3-27.2 and an award of prejudgment interest for the 1974, 1975 and 1976 refunds. The legislative history of that original enactment (L. 1975, c. 361) demonstrates the Legislature's *162 intent that it be applied only to those tax appeals from 1977 forward. It is the normal rule of statutory construction that amendments to a statute are given prospective application only unless the changes are merely procedural or the Legislature specifically indicates otherwise. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 73 (1978). The legislative scheme and the resulting case law have shown that where a taxpayer was not required to pay more than he thought was reasonable pending his appeal, any overpayments were considered voluntary and there were no provisions in the statute to award interest on any refunds. When the Legislature deemed it necessary to require taxpayers to pay their taxes pending appeal (to alleviate hardships on the taxing district), however, laws were enacted to provide for the payment of interest on refunds which resulted from overpayments. Obviously the overpayments were no longer "voluntary" and, as noted in the Senate Committee Statement to Assembly Bill 1276 (L. 1975, c. 361), a successfully appealing taxpayer "having lost the use of his money in meeting the tax payment requirement will be entitled to quick refund together with a reasonable interest payment."
Here, at the time of plaintiff's 1974, 1975 and 1976 tax appeals, the applicable statutory provisions permitted plaintiff to file those appeals to the county board by paying only such portion of the taxes as he would be required to pay if his appeal were sustained. N.J.S.A. 54:3-27. Thus, the overpayment was "voluntary." Similarly, since the township did not choose to seek an order from the Division of Tax Appeals for the payment of 75% of the taxes pursuant to N.J.S.A. 54:2-41.6 when plaintiff took his appeal to that agency, the overpayments remained "voluntary." Therefore, plaintiff was not then and is not now entitled to interest.
Plaintiff's reliance on Busik v. Levine, 63 N.J. 351 (1973), as support for his proposition that he is entitled to prejudgment interest is misplaced. In Busik the Supreme Court held that despite the usual rule that statutes operate prospectively, R. *163 4:42-11(b), which provided for prejudgment interest in tort actions, would be applied retroactively to those actions which arose from torts that occurred prior to the adoption of the rule. 63 N.J. at 361. As defendants note, the court in Busik emphasized that its holding, unlike the situation in the instant case, did not conflict with any statute on the subject. 63 N.J. at 358.
Similarly, plaintiff's argument that all statutes establishing liability for interest are remedial and, hence, applicable to actions brought before their effective date, disregards the well-settled rule that interest is not recoverable on an abatement of tax liability unless provision therefor is made by statute. 713 Co. v. Jersey City, 94 N.J. Super. at 214, and cases cited therein.
We find no merit in any of the other issues raised.
Affirmed.
NOTES
[1] The refund was computed as follows:

 Original Tax Court Tax Refund
 Year Assessment Judgment Reduction Tax Rate Due Plaintiff
 ________________________________________________________________________
 1974 $3,055,700 $2,607,000 $448,700 3.77 $ 16,915.99
 1975 3,055,700 2,514,000 541,700 4.05 21,938.85
 1976 3,055,700 2,524,000 526,700 4.37 23,016.79
 1977 3,055,700 2,557,000 478,700 4.05 19,387.35
 1978 3,055,700 2,267,000 788,700 3.85 30,364.95
 _________
 $111,623.93 Total

The township then calculated the interest due plaintiff "pursuant to N.J.S.A. 54:3-27.2" to June 1, 1980 as follows:

 1977 tax at 8% = $4,523.75
 1978 tax at 5% = 2,909.96
 _________
 $7,433.71

Subsequent to sending plaintiff the May 13, 1980 letter setting forth these calculations, defendants discovered a mathematical error and recomputed the interest due plaintiff for the 1977 overpayment as $4,077.26 and the interest due for the 1978 overpayment as $2,421.62; defendants therefore admitted to owing plaintiff total prejudgment interest of $6,498.88.
[2] As adopted by the Senate in June 1968 and as finally enacted, the interest rate on the refund was made equal to the rate charged by the taxing district on delinquent funds.
[3] Even though the words "in the same manner" create somewhat of an ambiguity as to whether the new provisions should be applied retroactively, the clear legislative intent was to see that all taxpayers were treated equally. An individual who successfully appealed his 1973 taxes under the old law and obtained a judgment on December 31, 1976 would not be entitled to interest on his refund. If the law is given the retroactive application that plaintiff now seeks, his successful appeal of his 1973 taxes, rendered after January 1, 1977, would result in interest on his refund. Such a retroactive application of N.J.S.A. 54:3-27.1 would not result in the equal treatment of taxpayers.

Compare the express retroactive provision of L. 1968, c. 365, § 1 (N.J.S.A. 54:2-41.5) which stated that the new statute would apply, "In any appeal to the Division of Tax Appeals ... from a judgment of a county board of taxation heretofore instituted and pending on the effective date of this act or hereafter instituted ...." [Senate Bill 565 (1968); emphasis added]