219 N.J. Super. 479 (1987)
530 A.2d 822
HAROLD PESKIN, MILTON PESKIN AND NORMAN PESKIN, PLAINTIFFS-APPELLANTS,
v.
LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1987.
Decided August 3, 1987.
*480 Before Judges LONG and D'ANNUNZIO.
Dennis J. Alessi argued the cause for appellant (Fox and Fox, attorneys; Dennis J. Alessi, of counsel and on the brief).
Frank R. Cinquina argued the cause for respondent (Schwartz and Andolino, attorneys; Frank R. Cinquina, of counsel and on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.S.C. (temporarily assigned).
Plaintiffs (Peskins) appeal the grant of summary judgment to defendant (Liberty). The underlying facts and the trial court's rationale are stated in detail in Judge Villanueva's opinion. Peskin v. Liberty Mutual Ins. Co., 214 N.J. Super. 686 (Law Div. 1986).
Liberty had issued excess liability insurance policies to the three plaintiffs. These policies expired in May 1972 and were not renewed. In February 1972 fire destroyed an apartment building owned by the Peskins' real estate partnership. The fire killed one person, injured six others, including two children, and left 30 persons homeless. Plaintiffs gave timely notice to their primary liability insurance carrier, Progressive Casualty *481 Insurance Company (Progressive), and to their fire insurance carrier. Plaintiffs did not notify Liberty at that time.
In July 1981, nine and one half years after the fire, an infant, Robert Wilcher, filed a complaint against the Peskins alleging that he sustained injuries in the 1972 fire.[1]
On April 23, 1983, almost two years after the Wilcher complaint was filed, the Peskins, for the first time, notified Liberty of the fire and the pending suit. In July 1983 the Wilcher claim was settled for $250,000. Progressive paid its $100,000 policy limit and the Peskins paid the balance.
Peskins commenced this action to compel Liberty to contribute to the settlement. See Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63 (1976). Liberty contended that it was not obligated to provide coverage because the Peskins had violated their obligation to notify Liberty of the occurrence of the fire "as soon as practical" and because the policies which Liberty had issued to the Peskins did not cover business property.
On Liberty's motion for summary judgment, Judge Villanueva found that the Peskins had violated their obligation to give timely notice to Liberty. The material facts as to the nature, circumstances and seriousness of the fire were not in dispute. The 11 year delay in giving notice of the occurrence, which delay included a 21 month delay in giving notice of the Wilcher suit, was conceded. Accordingly, we affirm Judge Villanueva's finding that Peskins' notice to Liberty was untimely.
However, before late notice of an occurrence will void coverage, the insurer must prove that it was prejudiced. Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968). Liberty's position with regard to prejudice in this case is novel. Liberty does not claim prejudice resulting from any impaired ability to *482 adequately investigate the stale facts of the Wilcher claim. See Cooper v. Government Employees Ins. Co., supra.; Nat'l Newark & Essex Bank v. American Ins. Co., 76 N.J. 64, 82 (1978). Rather, Liberty contends that it has been prejudiced in its ability to establish whether its coverage extended to the business risk represented by the Peskin partnership's apartment house. According to Liberty, its prejudice results from the fact that it no longer possesses all the records necessary to establish the parameters of its coverage.[2] Those records were destroyed by Liberty before it received notice of the fire. Judge Villanueva found that the absence of adequate coverage records constituted the prejudice to Liberty.
Our research has failed to produce any reported decisions which have applied this novel approach to the existence of prejudice. However, we express no opinion at this time as to the validity of this approach because of an unresolved threshold issue which requires disposition prior to evaluation of Liberty's claim of prejudice. The unresolved issue implicates Liberty's records retention practices. The prejudice, as found by the trial court, resulted in part from Liberty's records destruction schedule in effect between 1972 and 1983. Liberty's prejudice in this case is to some extent self-inflicted. Thus, the present case is distinguishable from the typical lack of notice case in which prejudice results from the insurer's inability to investigate an occurrence that is unknown to it. Consequently, the reasonableness of Liberty's destruction of the records must be considered before the prejudice found to exist in this case can be properly evaluated.
The record is silent as to industry standards or practices governing records retention. Therefore, this matter must be remanded to determine whether Liberty's records retention policy comported with industry standards or practices and was *483 otherwise reasonable. The trial court's conclusions as to prejudice must be reconsidered in light of the determination to be made on remand regarding the reasonableness of Liberty's records retention policy.
Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] N.J.S.A. 2A:14-21 tolls the statute of limitations during infancy.
[2] Although not conclusive, the records in Liberty's possession indicate that the policies issued to the Peskins were individual personal catastrophe policies. The Peskins do not have the policies which Liberty had issued.