Barry A. KOZYRA, Arbitrator,
Geraldine Della Buono,
Appellant,

v.

Paul J. ALLEN; M & G Convoy,
Third–Party Plaintiffs,

v.

Angelo SOLDANI, Third–
Party Defendant.

No. 91–5972.

United States Court of Appeals,
Third Circuit.

Argued July 10, 1992.

Decided Aug. 26, 1992.

Order Denying Rehearing Sept. 18, 1992.

Robert V. Falvey (argued), Michael Sussen, Pennsauken, N.J., for appellant.

Michael F. Nestor (argued), Anthony J. Iacullo, Tompkins, McGuire & Wachenfeld, Newark, N.J., for appellees, Paul J. Allen and M & G Convoy.

Before SLOVITER, Chief Judge, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In this diversity action, we are asked to predict whether the New Jersey Supreme Court would carve out an exception to its "entire controversy doctrine" in favor of the appellant on this appeal. Plaintiff-appellant Della Buono, the defendant in an earlier action, argues that she did not have a fair opportunity to present her claim for personal injuries because her insurance carrier did not correspond with her, she did not participate fully in the first litigation, and she was not made aware of her obligation to assert her personal injury claim. The district court in this proceeding granted the defendants' motion to dismiss Della Buono's claims with prejudice pursuant to New Jersey's entire controversy doctrine which precludes claims that are not joined in the underlying controversy. Della Buono appealed to this court. We affirm.

## I.

This litigation arose out of a three vehicle accident which occurred on May 17, 1988 in Newark, New Jersey. Plaintiff Della Buono was traveling in the left lane of the New Jersey Turnpike when Paul J. Allen, who was operating a tractor trailer owned by M & G Convoy, rear-ended the vehicle driven by Angelo Soldani and caused it to spin out of control and directly into Della Buono's path. Della Buono sustained injury to her knee requiring arthroscopic surgery.

On July 27, 1988, Soldani instituted a negligence action in the Superior Court of New Jersey, Law Division, against Allen, M & G Convoy, and Della Buono for damages he sustained as a result of the automobile accident. Della Buono was served with a Summons and Complaint which her husband forwarded to her liability insurance carrier. Pursuant to the contractual provisions of Della Buono's automobile policy, her insurance carrier defended the suit. The insurance carrier filed an answer which included a cross-claim for contribution against Allen and M & G Convoy, but it did not assert any affirmative claim for Della Buono's personal injuries. In September of 1989, the arbitrator rendered a verdict for no cause of action. Subsequently, Soldani settled with Allen and M & G Convoy and voluntarily dismissed the case as to Della Buono.

On May 10, 1990, Della Buono filed this negligence action against Allen and M & G Convoy in the United States District Court for the District of New Jersey to recover for personal injuries sustained in the same automobile accident at issue in the state court action. The defendants filed an answer and third-party complaint against Soldani. In their answer, the defendants asserted the entire controversy doctrine as an affirmative defense.

The matter went to arbitration and the arbitrator found judgment in favor of Della Buono in the amount of $90,000, assessing thirty percent against defendants Allen and M & G Convoy, jointly and severally, and seventy percent against Soldani. Subsequently, Allen and M & G Convoy filed a motion to dismiss Della Buono's complaint with prejudice, pursuant to the entire controversy doctrine. The district court granted the motion, concluding that because Della Buono's claim arose out of the same operational facts which generated the state court action, the entire controversy doctrine barred her personal injury claim. Della Buono timely appealed to this court, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291 as an appeal from a final order.

## II.

In deciding whether the district court properly applied the applicable law of the State of New Jersey, our review is plenary. *Carter v. Rafferty*, 826 F.2d 1299, 1304 (3d Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988). New Jersey Court Rule 4:30A, the entire controversy doctrine, provides as follows:

> [N]on-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.

The doctrine is a broad one, more preclusive than both *res judicata* and the Restatement. *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 965 (3d Cir.1991). It attempts to respond to "the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to parties, and the need for complete and final disposition through the avoidance of 'piecemeal decisions.'" *Cogdell v. Hospital Ctr. at Orange*, 116 N.J. 7, 560 A.2d 1169, 1173 (1989) (citation omitted); *see also Crispin v. Volkswagenwerk, A.G.*, 96 N.J. 336, 476 A.2d 250 (1984). It "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Cogdell*, 560 A.2d at 1172.

The doctrine, which is equitable in nature, is predicated upon judicial fairness.

*Cafferata v. Peyser*, 251 N.J.Super. 256, 597 A.2d 1101, 1103 (1991) (citations omitted). It provides "that the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Id.* at 1104 (citations omitted). The doctrine requires that a component of the controversy may not be unfairly withheld. A withholding is unfair if it effectively renders the pending litigation "merely one inning of the whole ball game." *William Blanchard Co. v. Beach Concrete Co., Inc.*, 150 N.J.Super. 277, 375 A.2d 675, 684 (1977).

Della Buono claims that the settlement reached by her liability insurer, under its contractual authority to enter settlements, does not bar her subsequent claim against third parties in the earlier action. She relies upon *Humble Oil & Refining Co. v. Church*, 100 N.J.Super. 495, 242 A.2d 652 (1968), which held that the plaintiff's insurance carrier's settlement of a wrongful death action against it did not preclude it from subsequently asserting property damage claims against third parties arising out of the same accident. The court reasoned that the settlement was effectuated for the insurance carrier pursuant to its contractual authority to enter into settlements rather than as the plaintiff's agent. *Id.*, 242 A.2d at 653–54.

However, *Humble Oil* was decided at a time when New Jersey allowed the permissive joinder of claims. R. 4:31 (repealed). The *Humble Oil* court explained, "A property damage claim, a personal injury claim and a claim for contribution under the Joint Tortfeasors Contribution Law constitute separate claims for relief even though they all arise by reason of one tortious incident. Joinder of such claims is permissive, not mandatory." 242 A.2d at 654. The joinder of claims is now mandatory under New Jersey Court Rule 4:30.[1] Thus, *Humble Oil* is of limited precedential value.

Della Buono argues that she did not have a full and fair opportunity to assert her claim, citing *Cafferata v. Peyser*, 597 A.2d 1101 and *Thornton v. Potamkin Chevrolet*, 94 N.J. 1, 462 A.2d 133 (1983). In *Cafferata*, the court held that the entire controversy doctrine should not bar a medical malpractice action where the plaintiff entered a *pro se* settlement of a medical bill for $160.80 in an earlier action in which no judge participated. The *Cafferata* court was concerned with the inequality of the forums because the plaintiff's initial action was venued in the Special Civil Part and his malpractice claim would have been decided in the Law Division.

The court found that the informal mediation-type proceeding was appropriate for small claims, but not for significant tort litigation. 597 A.2d at 1104. The court explained that the judicial system's ability to cope with minor commercial litigation is advanced by informal proceedings in which *pro se* litigants are able to resolve narrowly defined small claims quickly, inexpensively, and with minimum resort to legal counsel and judicial intervention, and that such proceedings were not intended to have preclusionary consequences beyond their own scope. *Id.* Because neither the plaintiff nor the physicians reasonably could have expected that the plaintiff, by paying the $160.80 bill, would be giving up a substantial malpractice tort claim against the physicians, the court concluded that the application of the entire controversy doctrine would be unfair and would undermine the legitimacy of small claims processing. *Id.*

In *Thornton*, the court held that a discharged African–American employee who failed to raise a claim of discrimination in a grievance arbitration could pursue that claim before the State Division on Civil Rights. The court explained that the entire controversy doctrine was not applicable "because there is no comparability between

---

**1.** At the time Della Buono filed this action, New Jersey Court Rule 4:27–1(b) stated, "Mandatory joinder. Each party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by the application of the entire contro-

versy doctrine." Rule 4:27–1 provided that a defendant failing to comply with 4:27–1(b) "shall thereafter be precluded from bring any action for such claim." In 1990, these rules were amended. *See* R. 4:30A.

private contractual arbitration and court or administrative adjudications. The doctrine presumes forums of equal jurisdiction." 462 A.2d at 135. The court noted that the functions of the arbitrator and the agency head differ because the arbitrator focuses only on the party's contract and not on the public interest. *Id.*

The dissent relies heavily on *Cafferata,* but neither that case nor *Thornton* supports Della Buono. As stated by the *Cafferata* court, at the heart of both *Cafferata* and *Thornton* are "the problems inherent in an inequality of forum." 597 A.2d at 1104. Here, the state court action involved the same facts and circumstances concerning the automobile accident. The state court, as the initial forum, was capable of adjudicating any claims the parties may have had for injuries resulting from the negligence of any of the other parties in that action.

■ As noted by the district court, Della Buono evoked a sympathetic claim. At oral argument, the district court questioned the fairness of an insurance carrier binding a party who never consulted with an attorney of her choice or who never actually participated in person through her attorney. Insurance counsel assigned to defend Della Buono did not speak with her and neither her insurance carrier nor appointed counsel advised her of her rights concerning her personal injury claim. After reviewing Della Buono's affidavit, however, the district court concluded that because she had actual knowledge that she was a named defendant in the state court action and was aware that the action proceeded to arbitration, her claim was precluded by the entire controversy doctrine.

Although this conclusion may render a hardship on Della Buono, the defendants in this action were in no way at fault for her failure to bring a claim at the appropriate time. Della Buono had more than one year between the filing of the state court action and its resolution to inquire about her rights and duties with respect to her personal injuries. Forcing the defendants to relitigate the same issues clearly would be prejudicial to them. As stated by the New Jersey Superior Court, when claims are left out of the original action:

> [t]he judgment rendered in the action will not be conclusive of the entire controversy, and the consequent risk of future litigation finally to resolve it cannot but gravely undermine all that the parties have attempted to accomplish in the original litigation and frustrate their expenditure of all the resources, both economic and noneconomic, devoted to achieving a judgment.

*Brown v. Brown,* 208 N.J.Super. 372, 506 A.2d 29, 33 (1986).

The district court correctly held that the entire controversy doctrine precluded Della Buono's claims. Della Buono's sworn affidavit states that she recalled receiving suit papers naming her a defendant in the state court action; she gave the papers to her husband who forwarded them to their insurance carrier; and she received a letter stating that an arbitration was being held, but that her presence was not required. Della Buono does not claim that she was unaware of her injury, and the district court found that she knew or reasonably should have known at the time of the state court action that she had been injured in the accident.

As noted by the dissent, our responsibility in this case is to predict the holding of the New Jersey Supreme Court. The entire controversy doctrine is a broad one and well established in New Jersey's jurisprudence. The dissent, in effect, wants this court to predict that New Jersey's Supreme Court would carve out an exception to the doctrine when a party "reasonably expects" to preserve a claim while nevertheless sitting on his/her rights. Diss.Op. at 17. New Jersey case law provides no support for such an exception.

The only exception recognized by the New Jersey Supreme Court concerns problems inherent in an inequality of forum. *See Thornton,* 462 A.2d at 135; *see also Cafferata,* 597 A.2d at 1104. The supreme court's holding that the entire controversy doctrine is not applicable against persons who are not parties in the original suit, *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85

N.J. 550, 428 A.2d 1254, 1258–59 (1981), clearly is not relevant because Della Buono was a named party in the first action. Nor do the cases cited by the dissent provide support for Della Buono. *See Citibank, N.A. v. Errico*, 251 N.J.Super. 236, 597 A.2d 1091, 1098 (App.Div.1991) (entire controversy doctrine did not bar claim which did not accrue until after original action was concluded); *9W Contractors, Inc. v. Englewood Cliffs Borough*, 176 N.J.Super. 603, 1 N.J.Tax 465, 424 A.2d 461, 464 (1980) (entire controversy doctrine did not bar taxpayers' claim for prejudgment interest where taxpayers could not even make their claim until court entered a final judgment in underlying action).

Here, Della Buono's claim stemmed from the same legal controversy which was appropriately adjudicated by the state court, and she knew of her injury at the time of that action. We thus conclude that the New Jersey Supreme Court would hold that the entire controversy doctrine precludes her claim against the defendants.[2]

### III.

■ Next, Della Buono argues that by engaging in a torturous course of discovery, the defendants waived their right to assert the entire controversy doctrine. *See Peskin v. Liberty Mutual Ins. Co.*, 214 N.J.Super. 686, 520 A.2d 852 (L.D.1986), *mod.*, 219 N.J.Super. 479, 530 A.2d 822 (1987); *Brown v. Brown*, 208 N.J.Super. 372, 506 A.2d 29 (A.D.1986). She notes that the law firm which represented the defendants in the state court action continued to represent them, and she asserts that they vigorously defended the matter for sixteen months, thus requiring her to continue in the costly litigation of the matter. Although the defendants took Della Buono's deposition and Della Buono exerted effort in compelling defendant Allen to submit to his deposition, the cases cited by Della Buono are distinguishable.

In *Peskin*, 520 A.2d 852, an insurer that waited until the eve of trial to object to the insureds' failure to join it in the insureds'

action against a real estate manager and insurance agent was estopped from asserting the defense. The court found it important that the insurer learned of the third-party suit during discovery, but did not object to the plaintiffs' alleged failure to join it as a defendant until the night before trial. *Id.* at 862. Moreover, the insurer asserted twelve affirmative defenses without setting forth the affirmative defense of the entire controversy doctrine, as required by New Jersey Civil Practice Rule 4:5–4. *Id.*

Here, the defendants had no opportunity to consolidate the actions, and they did not wait until discovery was completed to file their motion to dismiss. Contrary to Della Buono's assertion that the defendants' motion to dismiss was made at the completion of discovery, the defendants filed their motion to dismiss prior to arbitration. The defendants made their motion to dismiss on August 8, 1991, the arbitration took place on August 29, 1991, and the arbitration award was made on September 30, 1991. Moreover, the defendants asserted the entire controversy doctrine as an affirmative defense in their initial answer to Della Buono's complaint and again raised this defense in their motion to dismiss.

In *Brown*, the court held that a spouse's cause of action for assault, which arose during the pendency of a divorce litigation, did not have to be asserted in that litigation and was not barred by the entire controversy doctrine. Although the court observed that any supplemental claim generally must be included if it arises during the pendency of the original action, the court acknowledged that there may be "such practical difficulties attendant upon prosecuting a subsequent claim in pending litigation that insisting upon doing so would sacrifice rather than achieve expedition and economy and would compromise the fundamental due process right of a party to a fair opportunity to present his claim." *Id.* at 34.

---

**2.** Whether Della Buono has a valid malpractice suit against her insurance carrier is a separate and distinct question which is not before us today.

The court determined that the case was so "exceptional" as to permit the subsequent action to be filed. Specifically, the facts showed that the tort claim was sufficiently distinct from the action for divorce and equitable distribution; uncertainty existed as to how the tort action and divorce action should be tried if joined; the plaintiff's attorney refused to proceed with the tort action given the impending divorce trial date; the defendant continued to prosecute equitable distribution applications in the divorce action after he was served with the tort complaint and never sought to consolidate the two actions; and the defendant vigorously defended the action for two-and-a-half years prior to moving for summary judgment, resorting to delay tactics and running up the plaintiff's costs. *Id.* at 35. Additionally, the defendant obtained an order for further discovery, over the plaintiff's objection, which required the plaintiff to submit to depositions and to a physical and mental examination. *Id.* at 32.

In contrast to *Brown*, the claim asserted by Della Buono is not distinct from the claim raised by Soldani in the state court action. The claims involved the same automobile accident and easily could have been tried together. Della Buono did not seek an attorney's advice, and she would not have been harmed by asserting her rights at the time of the state action. Further, the defendants had no opportunity to consolidate the two actions.

Thus, the facts of this case are much less drastic than those of *Peskin* and *Brown*. The parties' limited discovery does not diminish Della Buono's full opportunity to raise her claims in the state court action. Under these circumstances, the defendants should not be found to have waived the defense of the entire controversy doctrine, which would subject them and the judicial system to the expenditure of time and money necessitated by another adjudication. Both the prejudice to the defendants and the principles supporting the entire controversy doctrine warrant affirming the dis-

trict court's decision dismissing Della Buono's complaint.

## IV.

We perceive no error in the district court's grant of the defendants' motion to dismiss Della Buono's claim as violative of New Jersey's broad entire controversy doctrine. The legal controversy that formed the basis of her complaint, the automobile accident of May 17, 1988, was the same legal controversy involved in the state court action. Della Buono was aware that she was a defendant in the state court action and was aware at that time that she had sustained injuries. As a defendant in the state action, Della Buono was required not only to assert her defenses, but also to raise timely any affirmative claims that she had against the plaintiff or her co-defendant. The defendants did not waive their right to assert the entire controversy doctrine as a defense. They timely raised the doctrine as an affirmative defense, undertook only limited discovery, and filed a motion to dismiss prior to arbitration.

Accordingly, the order of the district court dismissing the plaintiff's complaint will be affirmed.

SLOVITER, Chief Judge, dissenting.

The issue in this case is not whether members of this court believe that the expediency considerations underlying the entire controversy doctrine [1] justify precluding the claim of an insured seriously injured in an accident for which she has been found blameless merely because in prior proceedings her insurance company asserted claims for its own benefit. Instead, we must predict whether the New Jersey Supreme Court, which has not yet spoken on the issue, would bar the claim.

The New Jersey courts have repeatedly emphasized that the entire controversy doctrine "is equitable in nature and is fundamentally predicated upon 'judicial fairness and will be invoked in that spirit.'" *Caff-*

1. The entire controversy doctrine is broader than the provision of the Federal Rules of Civil Procedure under which cross-claims are permis-

sive rather than compulsory. *See* Fed.R.Civ.P. 13(g).

*erata v. Peyser,* 251 N.J.Super. 256, 597 A.2d 1101, 1103 (App.Div.1991) *quoting Crispin v. Volkswagenwerk, A.G.,* 96 N.J. 336, 476 A.2d 250, 253 (1984). Moreover, "[a]s a practical matter, the doctrine cannot be dealt with on an *a prior* basis. It must be applied empirically. That is to say, an evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day." *Wm. Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 375 A.2d 675, 683 (App.Div.), *certification denied,* 75 N.J. 528, 384 A.2d 507 (1977).

*Cafferata* is particularly instructive with regard to the equitable nature of the entire controversy doctrine. There, the court held that the entire controversy doctrine did not bar Cafferata from bringing an action for medical malpractice even though he had failed to raise that claim in a prior action brought against him by a physicians' association to recover the money due for the very same medical procedure giving rise to the malpractice claim. When the first action was filed by the physicians' association as a collection matter in the Special Civil Part, Cafferata responded merely by filing a letter stating that the bill had been submitted to Cafferata's insurance company and that the insurer would pay the doctor directly. The collection matter was ultimately settled when the insurance company paid most of the bill and Cafferata agreed to pay the $160.80 balance.

Subsequently, Cafferata sued the doctor for malpractice. The Appellate Division held that the even if Cafferata had knowledge of his malpractice claim at the time the collection action was brought, the entire controversy doctrine did not preclude the action. The court reasoned:

> Not only did plaintiff appear *pro se,* but the professional association itself, which was seeking payment of its bill, did not deem the matter of sufficient importance to warrant the presence of its attorney. No judge was involved in the proceeding, which was in effect an informal expedited mediation appropriate to small claims

but hardly to significant tort litigation. Nor is there anything in the record to suggest that plaintiff had or should have had the remotest notion that by paying the uncovered $160.80 he would be giving up a substantial tort claim or that the physicians had or should have had the remotest notion that, by accepting the $160.80, they were obtaining protection against the later assertion of that claim against them.

*Cafferata,* 597 A.2d at 1104. The court added that if the entire controversy doctrine were held applicable in those circumstances, it "would convert the ... doctrine from an equitable device into a trap for the unsuspecting. That is not its function." *Id.*

Although the *Cafferata* court also relied on the "problems inherent in an inequality of forum" in reaching its result, noting that the collection actions "were never intended to have preclusionary consequences beyond their own scope," *id.,* this case is similar to *Cafferata* in terms of the parties' reasonable expectations. Because Della Buono had an insurance contract, when she was served with papers in the first action she submitted the matter to her insurance company which was contractually obligated to provide the defense. There is nothing in the record to indicate that Della Buono was any less "unsuspecting" than Cafferata was that she would be giving up her personal injury claim by submitting the matter to her insurer without filing a claim in that proceeding to recover for her injuries.

Also lending support to Della Buono's argument is *Humble Oil & Refining Co. v. Church,* 100 N.J.Super. 495, 242 A.2d 652 (App.Div.1968). There, a truck owned by plaintiff Humble Oil collided with vehicles owned by defendants Church and Gale. Keiffer, a passenger in the Church automobile, was killed, and a wrongful death action was brought on Keiffer's behalf against Church, Gale, and Humble Oil. The defendants asserted cross claims against each other for contribution, and the matter was subsequently settled. Thereafter, Humble Oil instituted a negligence action against Church and Gale to recover

for property damage to its truck and trailer. The trial court granted a motion to dismiss for failure to state a claim on the ground, *inter alia*, that Humble Oil failed to raise its property damage claim in the first action. The appellate division reversed, reasoning that "[t]he insurance company, not Humble, authorized settlement of the Keiffer action—this under its reserved power to make 'such settlement of any claim or suit as it deems expedient.' In consummating the settlement the attorneys acted under authority granted not by Humble but by the insurance company." *Id.* at 653–54. Accordingly, the court held that the entire controversy doctrine was inapplicable.

While lower state court decisions are not controlling, "federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *See Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985). The majority correctly observes that *Humble Oil* was decided before the codification of the entire controversy doctrine in a rule governing mandatory joinder of claims, but it is not clear that this means, as the majority concludes, that *Humble Oil* is of "limited precedential value." *See* Majority Op. at 1112.

As the majority notes, the Rule in effect at the time of this case provided:

> Mandatory Joinder. Each party to an action shall assert therein all claims which he may have against any other party thereto *insofar as may be required by application of the entire controversy doctrine.*

1989 Rules Governing the Courts of the State of New Jersey, Rule 4:27–1(b) (emphasis added) (subsequently deleted June 29, 1990).[2] The language of this Rule does not define the boundaries of the doctrine, which was already in existence under New Jersey caselaw at the time *Humble Oil* was decided. *See Ajamian v. Schlanger*,

14 N.J. 483, 103 A.2d 9, 10 (N.J.), *cert. denied*, 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 659 (1954). Although there may indeed be factors that can be used to distinguish *Humble Oil*, that case demonstrates not only the New Jersey courts' concern with alleviating the occasional harsh effect of the entire controversy doctrine but also their willingness to recognize the practical distinction between the insurer and insured as parties for that purpose. *Cf.* Comment, The Entire Controversy Doctrine: A Novel Approach to Judicial Efficiency, 12 Seton Hall L.Rev. 260, 286 n. 241 (1982) [hereinafter Seton Hall Comment] (*Humble Oil* "involved a settlement procured by the litigant's insurance carrier under a contract arrangement where there was apparently little incentive to vigorously pursue the client's interests").

The majority states that "[t]he only exception recognized by the New Jersey Supreme Court [to the entire controversy doctrine] concerns problems inherent in an inequality of forum." Majority Op. at 1113. However, the New Jersey courts have carved out exceptions to the doctrine in various other circumstances where its application would be unfair, including situations involving unknown claims, *see Citibank, N.A. v. Errico*, 251 N.J.Super. 236, 597 A.2d 1091, 1098 (App.Div.1991), and unanticipated future claims, *see 9W Contractors, Inc. v. Englewood Cliffs Borough*, 176 N.J.Super. 603, 1 N.J.Tax 465, 424 A.2d 461, 464 (1980); *see also Aetna Ins. Co. v. Gilchrist Bros., Inc.*, 85 N.J. 550, 428 A.2d 1254, 1257–58 (1981) (interpreting doctrine as inapplicable to claims by or against persons who were not parties in the first suit). *See generally* Seton Hall Comment at 279–86 (discussing exceptions to entire controversy doctrine). Of particular significance here, "inequality of forum" also fails to explain the exception to the doctrine recognized in *Humble Oil*, which involved circumstances very similar to those at issue here.

**2.** Currently, Rule 4:30A provides:
Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.
1992 Rules Governing the Courts of the State of New Jersey, Rule 4:30A.

Here, as in *Humble Oil,* it was Della Buono's insurer that effected the settlement in the first action and caused the first action to be dismissed against her. I do not think one can fairly characterize Della Buono as "sitting on her rights" as the majority does. According to Della Buono's affidavit, she never spoke with an attorney from her insurance company and never received any correspondence regarding the suit except the initial suit papers and a letter indicating that an arbitration was being held and that her presence was not required. Indeed, she did not even know the name of the attorney or firm that represented her in that action. Nor was her lack of knowledge concerning the first action unreasonable, inasmuch as her insurer was obligated to defend the action and, in reality, was the entity that would be most directly affected by an unfavorable outcome in the matter.

Because the application of the entire controversy doctrine in these circumstances amounts to a "trap for the unwary" and is incompatible with the spirit of judicial fairness in which the New Jersey courts have repeatedly stressed the doctrine should be invoked, I respectfully dissent.

### SUR PETITION FOR REHEARING

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and ROSENN*, Circuit Judges.

The petition for rehearing filed by Geraldine Della Buono in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for hearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.