SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Bank Leumi U.S. v. Edward J. Kloss** **(A-32-19) (083372)**

**Argued April 27, 2020 -- Decided July 21, 2020**

**FERNANDEZ-VINA, J., writing for the Court.**

In this case, the Court addresses a question of law certified to this Court by the United States Court of Appeals for the Third Circuit:

> When a party filed, in lieu of an answer, a motion to dismiss under N.J. Ct. R. 4:6-2(e) for failure to state a claim, and the court dismissed with prejudice, is that party subject to claim preclusion when -- in a later suit that it files arising from the same transactional facts -- the defendant asserts the entire controversy doctrine as an affirmative defense?

In 2011 and 2013, Bank Leumi USA (Bank Leumi) provided Munire Furniture Company, Inc. (Munire) with a $15 million credit line followed by an additional $2 million loan. A pre-condition for both agreements was that Edward J. Kloss, who had also loaned Munire money, sign and reaffirm a subordination agreement. Bank Leumi later discovered that Munire had falsely reported its financial condition, declared the loan due, and brought suit against Munire, which filed for bankruptcy protection. Kloss filed proof of claims in the bankruptcy case, which showed that he had made an additional, undisclosed loan and had been receiving regular payments from Munire on both loans. Bank Leumi sent Kloss a letter demanding reimbursement for the payments he received in violation of the subordination and reaffirmation agreements.

Kloss then filed a complaint in Passaic County Superior Court against Bank Leumi, the president of Munire, and other individuals, alleging that Bank Leumi was negligent for failing to detect fraud by Munire and that it was unjustly enriched by payments it recovered from Munire. Bank Leumi filed a pre-answer motion to dismiss for failure to state a claim under Rule 4:6-2(e), which the court granted.

In October 2017, Bank Leumi filed suit against Kloss and Kloss Company LLC (collectively "defendants") in the United States District Court for the District of New Jersey, claiming breach of contract, fraud, and fraudulent inducement.

1

Defendants asserted the entire controversy doctrine as an affirmative defense in their answer and moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). The District Court granted defendants' motion. On appeal, the Third Circuit concluded that the appeal presented an unresolved question of New Jersey law, which it certified to the Court. The Court accepted the question as certified. 240 N.J. 190 (2019).

**HELD:** The Court answers the certified question in the negative. A party who files a successful motion to dismiss for failure to state a claim is not precluded by the entire controversy doctrine from asserting claims in a later suit that arise from the same transactional facts.

1. Rule 4:7-1 allows the assertion of all counterclaims but precludes parties from bringing in the future only those claims required to be asserted under Rule 4:30A. Rule 4:30A, in turn, provides in relevant part that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Rule 4:30A provides no further guidance as to what claims are "required to be joined" by the doctrine, but the Court has explained that the claims must arise from related facts or the same transaction or series of transactions but need not share common legal theories. (pp. 9-10)

2. The entire controversy doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy. The doctrine has three fundamental purposes: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay. It is an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases. See Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab Inst., 389 N.J. Super. 130 (App. Div. 2006) (finding application of the doctrine inequitable under the circumstances). (pp. 11-13)

3. The motion resulting in this appeal was made pursuant to Rule 4:6-2, which provides that certain defenses "may at the option of the pleader be made by motion, with briefs" including, as relevant here, "failure to state a claim upon which relief can be granted." Rule 4:6-2 also directs that, "if a motion is made raising any of [the listed] defenses, it shall be made before pleading if a further pleading is to be made." The rule thus distinguishes between a motion -- including a motion for failure to state a claim -- and a pleading. Although the Court has not previously considered the distinction in this context, it has been found dispositive in other jurisdictions. To the extent that federal law is instructive here, federal courts ruling on the issue have uniformly held that a motion to dismiss pursuant to Fed. R. Civ. P. 12 is not a responsive pleading. (pp. 13-15)

4.  The entire controversy doctrine does not bar a party who files a successful motion to dismiss for failure to state a claim from later asserting claims that arise from the same transactional facts.  Rule 4:6-2 treats motions to dismiss as distinct from responsive pleadings, and only pleadings trigger the preclusive effects of Rule 4:30A under Rule 4:7-1.  It is important that Rule 4:6-2 grants litigants two modes of responding to claims perceived as meritless.  Answering the certified question in the positive here would effectively make the second option unavailable to litigants, and the Court declines to create such a strong disincentive for a valid option countenanced by the court rules.  Equitable considerations lead to the same conclusion.  Fairness dictates that a litigant against whom a deficient complaint has been filed should be able to seek dismissal of baseless claims brought against it without concern that later claims may be barred.  Otherwise, plaintiffs could be incentivized to bring baseless actions in a time and manner most convenient to them in an attempt to prevent defendants from developing more legitimate claims as they see fit.  And defendants would be incentivized to respond with whatever claims they feel they can state at the moment when they might have preferred to pursue other means of resolution.  (pp. 15-18)

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion.  JUSTICE PATTERSON did not participate.**

Bank Leumi USA,

Plaintiff-Appellant,

v.

Edward J. Kloss, Kloss Company LLC,
d/b/a Crib & Teen City,

Defendants-Respondents.

On certification of question of law from the United
States Court of Appeals for the Third Circuit.

| Argued | Decided |
|---|---|
| April 27, 2020 | July 21, 2020 |

Jordan D. Weinreich argued the cause for appellant
(Sherman Wells Sylvester & Stamelman, attorneys;
Jordan D. Weinreich and Julian W. Wells, of counsel
and on the briefs).

Peter R. Bray argued the cause for respondents (Bray
& Bray, attorneys; Peter R. Bray, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

In this case, we address a question of law certified to this Court by the

United States Court of Appeals for the Third Circuit. The Third Circuit's

question arises from a dispute over loans that Bank Leumi USA (Bank Leumi)

1

made to Munire Furniture Company, Inc. (Munire), and a subordination agreement between Bank Leumi and Edward J. Kloss, a customer of Munire, who also loaned money to that company.

After discovering that Munire had misrepresented its financial status, Bank Leumi declared the loan due and demanded the outstanding amount from Munire. And, after learning that Kloss had received credits and offsets from Munire, Bank Leumi demanded reimbursement for the payments Kloss had accepted in violation of the subordination agreement.

Kloss, in turn, filed suit against Bank Leumi in state court. Bank Leumi filed a pre-answer motion to dismiss for failure to state a claim, pursuant to Rule 4:6-2(e), which the court granted. Later, Bank Leumi sued Kloss in federal court, asserting claims arising from the same transaction. Kloss filed a motion to dismiss, arguing that Bank Leumi's claims were precluded by the entire controversy doctrine.

The certified question is:

> When a party filed, in lieu of an answer, a motion to dismiss under N.J. Ct. R. 4:6-2(e) for failure to state a claim, and the court dismissed with prejudice, is that party subject to claim preclusion when -- in a later suit that it files arising from the same transactional facts -- the defendant asserts the entire controversy doctrine as an affirmative defense?

We answer the certified question in the negative.

I.

A.

In 2011, Bank Leumi provided Munire with a $15 million credit line. While conducting due diligence prior to the extension of this line of credit, Munire advised Bank Leumi of a pre-existing loan from Kloss in the amount of $1.5 million. As a pre-condition to its loan, Bank Leumi required Kloss to sign a subordination agreement stating that the total outstanding amount on his loan to Munire was $1.5 million and that he agreed to forgo any repayment of the loan until Munire's obligation to Bank Leumi was satisfied.

In 2013, Munire requested an additional $2 million loan from Bank Leumi. As a pre-condition to extending further credit, Bank Leumi required Kloss to sign a reaffirmation agreement reiterating that the total outstanding amount on his loan to Munire was $1.5 million and that he agreed to forgo any repayment of the loan until Munire's obligation to Bank Leumi was satisfied.

In 2014, Bank Leumi discovered that Munire had falsely reported its financial condition. Bank Leumi declared the loan due, demanded immediate payment of the full balance of $16,990,003.30, and brought suit against Munire in the United States District Court for the District of New Jersey.

Munire filed for bankruptcy protection and the court stayed the bank's suit. Kloss filed proof of claims in the bankruptcy case, which showed that he

had made an additional, undisclosed $300,000 loan with a twenty-five percent interest rate prior to signing the subordination agreement. It also showed that Munire had been making regular payments to Kloss on both its loans. In response, Bank Leumi sent Kloss a letter demanding reimbursement for the payments he received in violation of the subordination and reaffirmation agreements.

Kloss then filed a complaint in Passaic County Superior Court against Bank Leumi, the president of Munire, and other individuals, alleging that Bank Leumi was negligent for failing to detect fraud by Munire and that it was unjustly enriched by payments it recovered from Munire.

Bank Leumi filed a pre-answer motion to dismiss for failure to state a claim under Rule 4:6-2(e), attaching additional documents including the credit agreement, subordination agreement, amended credit agreement, and reaffirmation agreement. The court converted the motion to dismiss into a motion for summary judgment pursuant to Rule 4:6-2 and dismissed the case with prejudice.

## B.

In October 2017, Bank Leumi filed suit against Kloss and Kloss Company LLC d/b/a/ Crib & Teen City (collectively "defendants") in the

4

United States District Court for the District of New Jersey, claiming breach of contract, fraud, and fraudulent inducement.

Defendants asserted the entire controversy doctrine as an affirmative defense in their answer and moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). The District Court granted defendants' motion to dismiss, relying on two Third Circuit cases in which the doctrine was invoked to bar a subsequent suit -- but those cases did not involve motions to dismiss under Rule 4:6-2(e).[1]

---

[1]   In Kozyra v. Allen, a plaintiff filed a state court action against two defendants involved in a three-car accident for damages sustained in the accident, and the case settled. 973 F.2d 1110, 1111 (3d Cir. 1992). Later, one of the defendants in the original suit filed a negligence action in federal court to recover for her injuries resulting from the accident. Ibid. "In their answer, the defendants asserted the entire controversy doctrine as an affirmative defense," and the district court dismissed the suit on those grounds. Ibid. On appeal, a divided panel of the Third Circuit affirmed. Id. at 1110. The court stressed that the plaintiff "had actual knowledge that she was a named defendant in the state court action," that she was aware of her injuries at the time of the state court action, and that her "claim stemmed from the same legal controversy" as the state court action. Id. at 1113-14. The court found that allowing the case to proceed "would subject [defendants] and the judicial system to the expenditure of time and money." Id. at 1115.

The following year, a Third Circuit panel followed Kozyra in a case that could not be "reasonably distinguish[ed]" from it, but expressed reluctance in doing so, noting that "[i]t does not seem efficient or particularly fair to require a person asserting a personal injury claim based on negligence or products liability to piggyback the claim on top of a property damage subrogation suit by one insurance company against another simply because the insurance company managed to get to the courthouse first." See Petrocelli v. Daniel Woodhead Co., 993 F.2d 27, 29-31 (3d Cir. 1993).

Bank Leumi appealed the District Court's order, arguing the entire controversy doctrine did not apply because the bank did not have an opportunity to present counterclaims. The Third Circuit concluded that the appeal presented an unresolved question of New Jersey law, which it certified to this Court pursuant to Rule 2:12A-3.

We accepted the question as certified. 240 N.J. 190 (2019).

## II.

## A.

Bank Leumi argues that the entire controversy doctrine does not apply in cases such as this. It first argues that applying the entire controversy doctrine would be contrary to Rule 4:6-2 and the other court rules that set forth the process for filing claims. It explains that Rule 4:6-2 provides for a pre-answer motion to dismiss and that barring a party that prevails on such a motion from filing claims would essentially remove the option for litigants.

Bank Leumi argues that such an interpretation would leave a litigant with no good option when confronted with a nonmeritorious claim. Given the standard for succeeding on a motion to dismiss, a party could force the hand of its opponent by filing a meritless lawsuit, Bank Leumi explains. The opposing party would have no choice but to proceed with any counterclaims they have under the terms of the meritless plaintiff's suit. Thus, a party would have to

6

incur the expense of defending against meritless claims that would have otherwise been dismissed, or find its affirmative claims precluded.

Bank Leumi contends that for claims to be precluded under the entire controversy doctrine, the party must have "had a fair and reasonable opportunity to pursue [the] claims in a prior action." If a motion to dismiss for failure to state a claim "is denied in whole or in part, the moving party must file a responsive pleading within 10 days" pursuant to Rule 4:6-1(b), and within that pleading must "assert any transactionally related claims it may have against the non-moving party or risk almost certain preclusion pursuant to the entire controversy doctrine," under Rules 4:7-1 and 4:30A. But if a motion to dismiss is granted, Bank Leumi stresses, "there is no complaint against which a responsive pleading can be filed" and the party who filed the motion "has not had the opportunity to assert any counterclaims necessary to trigger the entire controversy doctrine's preclusive effect." Bank Leumi argues that, because a motion to dismiss is not a form of pleading, Rule 4:7-1 cannot apply to a motion to dismiss.

Bank Leumi also emphasizes the equitable nature of the entire controversy doctrine, which it argues is based on the principle that the precluded party had a fair opportunity to present its claims. Bank Leumi contends that this Court has extended the entire controversy doctrine beyond

7

situations that would call for preclusion under federal rules only in limited circumstances -- and the bank argues that the present circumstances do not warrant such extension. Rather, Bank Leumi urges this Court to look to federal claim preclusion rules, which apply only to a party that has filed a pleading -- something a party that files a successful pre-answer motion to dismiss has not done.

B.

Defendants argue that Bank Leumi made a series of intentional decisions to withhold its affirmative claims from the initial lawsuit because it concluded that federal court was its preferred forum. They assert that such strategic maneuvering is the type of conduct to which the entire controversy doctrine applies. Defendants emphasize that the goals of the entire controversy doctrine are judicial economy and the prevention of fragmented litigation and assert that those purposes should require Bank Leumi to have proceeded with its claims in the state court litigation.

Defendants also argue that, contrary to Bank Leumi's assertion, it did have a reasonable opportunity to prosecute its affirmative claims. They emphasize that Bank Leumi went beyond filing a motion to dismiss by attaching additional documents to its motion, causing the motion to be treated as one for summary judgment. Defendants contend that the court rules

8

provided Bank Leumi two opportunities to litigate its claims in the initial action. First, the bank could have filed an answer asserting counterclaims and then moved to dismiss defendants' claims. Alternatively, Bank Leumi could have filed its counterclaim after the dismissal of defendants' claims because the litigation remained ongoing with respect to other defendants.

## III.

## A.

The Restatement (Second) of Judgments sets forth that failure to assert permissive counterclaims does not result in preclusion. See § 22 (Am. Law Inst. 1982). As the Restatement anticipates, however, the rules of procedure of a particular jurisdiction may operate to preclude the later assertion of claims that could have been brought responsively in an earlier action. See § 22(2)(a) ("A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if . . . [t]he counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court . . . ."). In New Jersey, it is the entire controversy doctrine that governs such preclusion.

Rule 4:7-1, which addresses mandatory and permissive counterclaims, states that, unless otherwise provided, "a pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the

9

transaction or occurrence that is the subject matter of the opposing party's claim," but cautions that "[a] defendant . . . failing to comply with Rule 4:30A (entire controversy doctrine) . . . shall thereafter be precluded from bringing any action for such claim." R. 4:7-1 (emphases added). The rule thus allows the assertion of all counterclaims but ties preclusion to failure to state only those claims required under Rule 4:30A.

Rule 4:30A, in turn, codifies the entire controversy doctrine and provides in relevant part that

> [n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by Rule 4:64-5 (foreclosure actions) and Rule 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

Rule 4:30A provides no further guidance as to what claims are "required to be joined" by the doctrine, but this Court has explained that the "claims must 'arise from related facts or the same transaction or series of transactions' but need not share common legal theories." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 119 (2019) (quoting Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015)).

Finally, the entire controversy doctrine is furthered by Rule 4:5-1(b)(2), which requires parties to disclose in their initial pleadings "whether the matter

10

in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding" and "whether any other action or arbitration proceeding is contemplated." That requirement serves "to implement the philosophy of the entire controversy doctrine." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-1 (2019).

The entire controversy doctrine "stems directly from the principles underlying the doctrine of res judicata or claim preclusion." Prevratil v. Mohr, 145 N.J. 180, 187 (1996). However, "[t]he doctrine is a broad one, more preclusive than both res judicata and the Restatement [(Second) of Judgments]." Kozyra v. Allen, 973 F.2d 1110, 1111 (3d Cir. 1992).

The "doctrine 'embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.'" Wadeer, 220 N.J. at 605 (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). The doctrine has three fundamental purposes: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and

the avoidance of waste and the reduction of delay." DiTrolio v. Antiles, 142 N.J. 253, 267 (1995).

Notwithstanding those guiding principles, the entire controversy doctrine "remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Dimitrakopoulos, 237 N.J. at 114 (quoting Nicastro, 201 N.J. at 125). "[A] court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Id. at 119.

In Allstate New Jersey Insurance Co. v. Cherry Hill Pain & Rehab Institute, 389 N.J. Super. 130 (App. Div. 2006), the Appellate Division determined that application of the entire controversy doctrine following a successful motion to dismiss would be inequitable. In that case, a health care facility sued several insurance companies seeking reimbursement for patients insured by those companies. Id. at 133-34. Rather than file an answer, the insurance companies moved to dismiss the complaint pursuant to Rule 4:6-2(e) for failing to state a claim upon which relief could be granted. The trial court granted the motion. Later, the insurance companies filed a complaint against the health care facility alleging fraudulent billing. The trial court granted the

health care facility's motion to dismiss on the basis of the entire controversy doctrine.

The Appellate Division reversed, finding that "application of the entire controversy doctrine here is contrary to its objectives, namely, the promotion of conclusive determinations, public policy, party fairness, as well as judicial economy." Id. at 141. The court found that because the insurance companies "had not filed responsive pleadings at the time they filed their motion to dismiss, they were not required to file a certification regarding contemplated actions under Rule 4:5-1." Id. at 142. Further, the health care facility's claim "was dismissed based upon lack of standing and failure to state a cause of action, not on the merits." Ibid. The court also found that the insurance companies' "complaint involved separate and discrete claims from those impleaded in [the health care facility's] complaint." Ibid. Lastly, the court found "that no meaningful judicial economy would be served by requiring" the insurance companies to participate in the original case and that "[i]t would be unfair to require [them] to participate . . . when they could extricate themselves by simply filing one motion attacking the sufficiency of the pleadings." Ibid.

B.

The motion resulting in this appeal was made pursuant to Rule 4:6-2, which provides that certain defenses "may at the option of the pleader be made

13

by motion, with briefs" including, as relevant here, "failure to state a claim upon which relief can be granted." The rule also directs that,

> [i]f a motion is made raising any of [the listed] defenses, it shall be made before pleading if a further pleading is to be made. . . . If, on a motion to dismiss based on the defense [of failure to state a claim upon which relief can be granted], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 4:46.
>
> [R. 4:6-2 (emphasis added).]

The rule thus distinguishes between a motion -- including a motion for failure to state a claim -- and a pleading. The comment to the rule stresses that distinction, clarifying that the defense of failure to state a claim "may be raised either by answer or by motion, but, if by motion, then before the party's required responsive pleading." Pressler & Verniero, cmt. 1 on R. 4:6-2 (emphases added).

Although this Court has not previously considered the distinction in this context, it has been found dispositive in other jurisdictions. As the Restatement explains, "[e]ven in jurisdictions having a statute or rule making certain counterclaims compulsory, such provisions may not apply when no answer or other responsive pleading is filed." Restatement (Second) of Judgments § 22 cmt. a. And, to the extent that federal law is instructive here, federal courts ruling on the issue have uniformly held that a motion to dismiss

14

pursuant to Fed. R. Civ. P. 12 is not a responsive pleading. See, e.g., Mellon Bank, N.A. v. Ternisky, 999 F.2d 791, 795 (4th Cir. 1993) (preclusion doctrine "does not come into play when a defendant files only a motion to dismiss, instead of a pleading"); United States v. Snider, 779 F.2d 1151, 1157 (6th Cir. 1985) ("A motion to dismiss pursuant to Rule 12(b), Fed. R. Civ. P., is not a pleading as defined in Rule 7. There is no reason for a party to file a pleading while a motion to dismiss is pending."). Thus, under federal law, "a party is not required to assert a counterclaim where it successfully files a pre-answer motion to dismiss." Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 459 (6th Cir. 2013).

## IV.

We now hold that the entire controversy doctrine, likewise, does not bar a party who files a successful motion to dismiss for failure to state a claim from later asserting claims that arise from the same transactional facts. Our decision is supported both by the text of the court rules and the equitable considerations that undergird the doctrine.

Rule 4:6-2 provides two options for how defendants may proceed when presented with a facially deficient complaint. They may choose to file an answer and include -- perhaps among other defenses -- the defense of failure to state a claim upon which relief can be granted. If defendants chart that course,

15

then the strictures of <u>Rule</u> 4:7-1 apply and, although the defendant <u>may</u> state any claim he may have, he <u>must</u> raise in a counterclaim all claims encompassed by the entire controversy doctrine, <u>R.</u> 4:30A, which requires the joining in a single action of all claims arising out of the same transaction or series of transactions, <u>see</u> <u>Dimitrakopoulos</u>, 237 N.J. at 119.

Alternatively, defendants may choose to challenge the perceived deficiency by filing a motion to dismiss. If they elect to assert their defense in a motion, that motion must be made prior to submitting a responsive pleading. If a motion to dismiss is filed, there is no reason for the moving party to then file additional pleadings until the motion to dismiss is ruled upon. <u>Rule</u> 4:6-2 thus plainly treats motions to dismiss as distinct from responsive pleadings, and only pleadings trigger the preclusive effects of <u>Rule</u> 4:30A under <u>Rule</u> 4:7-1.

It is important that <u>Rule</u> 4:6-2 grants litigants <u>two</u> modes of responding to claims perceived as meritless. Answering the certified question in the positive here would effectively make the second option unavailable to litigants who anticipate they may at some point have an affirmative claim of their own or who simply prefer a cautious approach. We decline to create such a strong disincentive for a valid option countenanced by our court rules.

16

Equitable considerations lead us to the same conclusion. A party that files a motion to dismiss does not have an opportunity to affirmatively assert claims of its own within that motion; therefore, a party whose motion to dismiss is granted will not have had a "fair and reasonable opportunity" to fully litigate its claims. If the party moving to dismiss succeeds on its motion -- indicating the failure of the opposing party to raise any claim upon which relief can be granted, even though all inferences are drawn in that party's favor -- it would be profoundly inequitable to then deprive the winning party of the opportunity to assert any claim.

Fairness dictates that a litigant against whom such a deficient complaint has been filed should be able to seek dismissal of baseless claims brought against it without concern that later claims may be barred. Otherwise, plaintiffs could be incentivized to bring baseless actions in a time and manner most convenient to them in an attempt to prevent defendants from developing more legitimate claims as they see fit. And defendants would be incentivized to respond with whatever claims they feel they can state at the moment when they might have preferred to pursue other means of resolution.

Although the rule we announce today may sometimes result in more than one lawsuit arising from the same transactional facts, it is the result that

17

comports with the text of our court rules. It is also the result that offers the greatest measure of fairness to litigants, an important equitable consideration.

## V.

In conclusion, we answer the certified question in the negative and determine that a party who files a successful motion to dismiss for failure to state a claim is not precluded by the entire controversy doctrine from asserting claims in a later suit that arise from the same transactional facts.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA'S opinion. JUSTICE PATTERSON did not participate.